*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CM-0136

BEN SAIDI, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2013-DVM-2520)

(Hon. Ronna L. Beck, Trial Judge)

(Argued January 28, 2015                    Decided February 26, 2015)

*Rahkel Bouchet*, appointed by the court, for appellant.

*J. Matt Williams*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, *Orla M. Brady*, and *Ann K. H. Simon*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and KRAVITZ, *Associate Judge, Superior Court of the District of Columbia.*[*]

KRAVITZ, *Associate Judge*:  A judge of the Superior Court found appellant

Ben Saidi guilty of assault following a non-jury trial.  Mr. Saidi appeals,

contending that the evidence was insufficient as a matter of law to support his

_____

[*] Sitting by designation pursuant to D.C. Code § 11-707 (a) (2012 Repl.).

conviction and that the trial judge failed to make adequate "special findings" in accordance with his timely request under Rule 23(c) of the Superior Court Rules of Criminal Procedure. We reject the legal sufficiency argument but agree that the trial judge did not make the requisite findings on all disputed issues of fact and law essential to the resolution of a defense-of-property defense advanced by Mr. Saidi at trial. We therefore vacate Mr. Saidi's conviction and remand the case for further proceedings in the trial court.

I.

Michael Wilson was at home by himself in his first floor apartment unit at 308 Florida Avenue, N.W. at approximately 1:30 a.m. on November 4, 2013 when he heard women's voices yelling and crying in the upstairs unit of the building. Mr. Wilson tried to ignore the voices, but when they persisted he decided he should investigate and intercede if necessary.

The building at 308 Florida Avenue, N.W. is a two-story townhouse divided into two separate apartment units, with one apartment on each floor. Mr. Wilson lived in the first-floor apartment along with a roommate named Barbara, described as "the landlady" of the building. Mr. Saidi lived in the second-floor apartment

with a roommate named Brianna Morris. The front door to the building opened into a common entry hall with two internal doors, one leading directly into the first-floor apartment, the other to a set of stairs that ascended to the second-floor apartment. The occupants generally kept the front door to the building locked and the internal doors to the first- and second-floor apartments closed but unlocked.

Mr. Wilson knocked on the door to the stairs leading to the second-floor apartment, poked his head into the stairwell, and hollered up the stairs, asking whether everything was okay. Ms. Morris responded that things were "not okay," and Mr. Wilson climbed the stairs to the second-floor unit, where he found Ms. Morris and another woman named Samantha in the living room and Mr. Saidi in the kitchen. Ms. Morris was standing in the corner of the living room by the fireplace, sobbing, with Samantha standing nearby, trying to comfort her. Mr. Saidi was sitting at his computer at a table in the kitchen, clearly drunk. Mr. Wilson asked what was going on, and Ms. Morris told him that Mr. Saidi had been making crude remarks and advances toward her and that she was afraid to remain in the upstairs apartment with him overnight. Mr. Wilson offered Ms. Morris and Samantha the use of Barbara's room in the first-floor unit, as Barbara was not at home. Ms. Morris accepted the offer, and Mr. Wilson left the second-floor apartment and went downstairs to prepare the room.

Approximately fifteen or twenty seconds after he returned to his downstairs apartment, however, Mr. Wilson heard what sounded like renewed fighting or scuffling in the second-floor unit. Mr. Wilson opened the door to the upstairs apartment, ran back up the stairs, and saw Ms. Morris standing with her back to the wall in the kitchen. Samantha was standing in front of Ms. Morris, trying to protect her from Mr. Saidi, who had his hands on Ms. Morris and appeared to be "going for" her. Mr. Wilson eased Mr. Saidi away from Ms. Morris and asked what was happening. Mr. Saidi said Ms. Morris had punched him while Mr. Wilson was downstairs, and Mr. Wilson responded by telling Mr. Saidi to call the police if he felt he had been assaulted but not to attack Ms. Morris. When Mr. Saidi declined to call the police, Mr. Wilson told him to sit down and leave Ms. Morris and Samantha alone, explaining that the women were going to spend the night in the downstairs apartment and that all of them would talk things over with Barbara when she returned the next day.

Ms. Morris and Samantha then left the second-floor apartment and went downstairs toward the front porch of the building. Mr. Saidi made a move to follow them, but Mr. Wilson stepped in his way and again told him to sit down. This made Mr. Saidi very upset, and he raised his fist at Mr. Wilson and punched

the wall before telling Mr. Wilson to "get out." Mr. Wilson said he would leave when Mr. Saidi was sitting in a chair and had settled down, but not until then. Mr. Saidi then punched Mr. Wilson in the chest with a closed fist. The punch did not hurt Mr. Wilson, but it made him angry, and the two men yelled at each other for several minutes until the police arrived and arrested Mr. Saidi.

The government charged Mr. Saidi with three counts of assault – against Ms. Morris, Samantha, and Mr. Wilson. On the day of trial, however, the government dismissed the charges alleging assaults against Ms. Morris and Samantha and went forward on the single remaining count alleging an assault against Mr. Wilson.

At the beginning of the trial, before any evidence was presented, counsel for Mr. Saidi advised the trial judge that he would be requesting "specific factual findings under D.C. Criminal Rule 23(c)." Mr. Saidi's trial counsel did not elaborate on this request at the time, but he later asserted in his closing argument that Mr. Saidi must be acquitted of assaulting Mr. Wilson because the evidence supported a defense-of-property defense. Specifically, counsel suggested that Mr. Wilson became a trespasser when he entered the second-floor apartment a second time, without a second invitation, and that even if the initial, implicit invitation from Ms. Morris were deemed to extend to the second entry, Mr. Wilson became a

trespasser when Mr. Saidi later directed him to leave the apartment and he refused. Under the law, counsel argued, a lawful occupant of real property may use a reasonable amount of force to eject a trespasser if such force is reasonably necessary to protect the property from the trespass. With the court's permission, counsel for Mr. Saidi then read directly from the court's standard criminal jury instruction on the defense-of-property defense, stating: "A person is justified in using reasonable force to protect his property from trespass when he reasonably believes that his property is in immediate danger of an unlawful trespass and that the use of such force is necessary to avoid the danger. Similarly, if a person reasonably believes that someone has unlawfully trespassed on his property, he may use reasonable, non-deadly force to secure the property." Reading further from the standard jury instruction, Mr. Saidi's counsel told the judge: "Mr. Saidi is not required to prove that he acted in defense of his property. If evidence of defense of property is present, the government must prove beyond a reasonable doubt that Mr. Saidi did not act in defense of his property." *See* Criminal Jury Instructions for the District of Columbia, No. 9.520A (5th ed. 2010).

At the conclusion of the parties' closing arguments, the trial judge acknowledged it was the government's burden to prove beyond a reasonable doubt that Mr. Saidi did not act reasonably in defense of his property. The judge then

stated, "I just need a minute and then I'll be able to rule." After a brief pause, the judge proceeded directly to an oral ruling from the bench in which she found Mr. Saidi guilty of assault.

The judge found, as an initial matter, that Mr. Wilson received an implicit invitation to enter the second-floor apartment when he called upstairs and Ms. Morris told him that things were not okay. The judge found further that Mr. Saidi made threatening gestures toward Mr. Wilson and punched him in the chest without any physical aggression by Mr. Wilson. The judge expressly credited Mr. Wilson's testimony "in its entirety" and, in particular, Mr. Wilson's statement that he did not physically provoke Mr. Saidi.

The judge then turned to Mr. Saidi's defense-of-property defense:

> I find that there wasn't a proper – his actions weren't properly in defense of – of property. At the time when Mr. Wilson was telling him to sit down, that was because there was this very intoxicated person who was pursuing these women with whom there had been some physical encounter among them; although he hadn't seen it, he had heard from – and because he testified to it, that Samantha had been – he understood that Samantha had been punched when – when there had been an effort to punch Brianna.
>
> But I don't find that the – Mr. Wilson's testimony raises a – an appropriate defense of property nor that it was appropriate for Mr. Saidi to be punching Mr. Wilson in

defense of the property. Mr. Wilson, who lived in this residence, had been, you know, clearly invited here by these women in terms of [their] expressing distress. When he comes up, he's not asked to leave by them. Brianna was also a resident of this upstairs area and that Mr. Saidi did not have a right to punch Mr. Wilson at that point to get him to leave.

So that's – that's my conclusion and I find that he is guilty of assault. He was not acting – the government has proved beyond a reasonable doubt that an assault [was] committed and [was] not justified by any defense of property.

## II.

We have long held that a person lawfully in possession of real property is privileged at common law to use a reasonable amount of force to eject a trespasser from the property but is guilty of assault if he uses more force than is reasonably necessary in the circumstances. *See Gatlin v. United States*, 833 A.2d 995, 1008 (D.C. 2003); *Shehyn v. United States*, 256 A.2d 404, 406 (D.C. 1969). "This is true regardless of any actual or threatened injury to the property by the trespasser." *Shehyn*, 256 A.2d at 406. However, a person in possession of real property may not use force to eject someone who has entered or remained on the property to address a "private necessity," *i.e.* someone whose presence on the property "is or reasonably appears to be necessary to prevent serious harm to . . . a third person, . .

. unless the actor knows or has reason to know that the one for whose benefit he enters [or remains] is unwilling that he shall take such action." RESTATEMENT (SECOND) OF TORTS § 197 (1)(b) (1965). Such a person is privileged at common law to enter or remain on the property, *id.*, and is not a trespasser, *id.* § 158 cmt. e.

Whenever a defense-of-property defense is fairly raised in the evidence, the government has the burden of proving beyond a reasonable doubt that the defendant did not act reasonably in defense of his property. *See Gatlin*, 833 A.2d at 1008. Here, therefore, the government had to prove not only that Mr. Saidi punched Mr. Wilson, but also that (1) Mr. Wilson was not a trespasser in the second-floor apartment at the time Mr. Saidi struck him; (2) Mr. Saidi hit Mr. Wilson for a reason other than ejecting him from the second-floor apartment, *i.e.* the force used by Mr. Saidi was not in defense of property; or (3) Mr. Saidi used more force than was reasonably necessary in the circumstances to get Mr. Wilson to leave. Proof beyond a reasonable doubt of any one of these facts would have defeated Mr. Saidi's defense-of-property defense, but we conclude, for the following reasons, that the evidence presented by the government at trial was easily sufficient to establish all three.

First, the evidence supports a reasonable inference that Mr. Wilson was not a trespasser at the time Mr. Saidi punched him. Our case law does not define the term "trespasser" in the context of a common law defense-of-property defense, but the unlawful entry statute in the District of Columbia describes a trespasser as a person who, without lawful authority, enters or attempts to enter private property against the will of the lawful occupant or the person lawfully in charge of the property or refuses to leave on demand of the lawful occupant or the person lawfully in charge. *See* D.C. Code § 22-3302 (a)(1) (2014 Supp.). We adopt this definition for our analysis here, and we conclude that the evidence, viewed in the light most favorable to the government, allows findings beyond a reasonable doubt that Mr. Wilson's initial entry into the second-floor apartment was authorized by Ms. Morris (a lawful occupant of the upstairs unit); that Mr. Wilson's second entry, just a few moments after he went downstairs to prepare Barbara's room for Ms. Morris and Samantha, was authorized as a mere extension of the initial entry; and that even if Mr. Saidi's subsequent demand that Mr. Wilson leave the upstairs unit effectively countermanded Ms. Morris's invitation, Mr. Wilson was privileged to remain on the premises for a reasonable period of time for the purpose of preventing serious harm to Ms. Morris. Indeed, the evidence at trial was sufficient to support a finding beyond a reasonable doubt that both of Mr. Wilson's entries into the second-floor apartment and his decision to remain there after he was told

to leave were legally authorized by the "private necessity" of protecting Ms. Morris from serious harm at the hands of Mr. Saidi.

Second, a reasonable fact finder could infer from the evidence that Mr. Saidi's assaultive conduct toward Mr. Wilson was motivated by something other than a desire for Mr. Wilson to leave the second-floor apartment. The testimony showed that Mr. Saidi was very upset by Mr. Wilson's intervention in his dispute with Ms. Morris, and in these circumstances one could find beyond a reasonable doubt that Mr. Saidi acted out of frustration or anger rather than a wish to eject Mr. Wilson. Thus, even if Mr. Wilson became a trespasser at some point in the sequence of events, the evidence amply supported a finding that Mr. Saidi's assaultive behavior toward Mr. Wilson was not intended to protect the second-floor apartment from his trespass.

Third, the evidence showed that Mr. Wilson never hit Mr. Saidi or used any other type of physical force to provoke him. Thus, even if Mr. Wilson was a trespasser at the time Mr. Saidi punched him in the chest, and even if Mr. Saidi struck Mr. Wilson in an effort to get him to leave the second-floor apartment, the evidence supported a finding that Mr. Saidi used excessive force in the circumstances.

The trial judge, however, did not make specific findings on any of these issues, all of which were disputed in the evidence and raised, at least implicitly, in the arguments of the parties concerning Mr. Saidi's defense-of-property defense. The judge did not address whether Mr. Wilson was a trespasser – or ever became one – beyond saying that Mr. Wilson first entered the second-floor apartment with an implicit invitation from Ms. Morris. In particular, the judge never discussed whether Mr. Wilson's second entry was authorized by Ms. Morris's initial invitation; if so, whether Mr. Saidi effectively countermanded that invitation by directing Mr. Wilson to leave the upstairs apartment at a time when Ms. Morris was no longer present; or whether Mr. Wilson was nevertheless authorized to remain in the upstairs apartment to protect Ms. Morris from serious harm. The judge's findings also omitted any discussion of whether the amount of force used by Mr. Saidi was reasonable in the circumstances or whether Mr. Saidi punched Mr. Wilson in an effort to eject him from the unit or out of anger, frustration, or some other motivation inconsistent with his defense-of-property defense.

The rules governing non-jury criminal trials in the Superior Court do not require special findings in every case. Rather, general verdicts of guilty or not guilty are usually acceptable except in cases in which timely requests for special

findings have been made. Rule 23(c) of the Superior Court Rules of Criminal Procedure provides:

> In a case tried without a jury the Court shall make a general finding and shall in addition, on request made before the general finding, find the facts specially. Such findings may be oral. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.

The trial judge's failure to make findings on the disputed issues relating to Mr. Saidi's defense-of-property defense thus likely would pose no problem on appeal had Mr. Saidi not made a timely request for special findings under Rule 23(c). Trial judges are presumed to know the law, *Cook v. United States*, 828 A.2d 194, 196 n.2 (D.C. 2003), and their rulings come to us with a presumption of correctness, *Mattete v. United States*, 902 A.2d 113, 116 (D.C. 2006). On appeal of a general verdict rendered in the absence of a timely request for special findings, therefore, "findings will be implied in support of the judgment if the evidence, viewed in a light most favorable to the government, warrants them," *United States v. Musser*, 873 F.2d 1513, 1519 (D.C. Cir. 1989) (interpreting the identical federal rule); *United States v. Ochoa*, 526 F.2d 1278, 1282 n.6 (5th Cir. 1976) (same), and we will review the record merely to determine whether the trial judge was unaware of or misunderstood the law's requirements and whether evidence presented at trial supported the judge's conclusion of guilt, *In re D.N.*, 65 A.3d 88, 96 (D.C. 2013).

"This court has repeatedly held that when special findings are not requested, the trial court is 'not required to make them.'" *Tyson v. United States*, 30 A.3d 804, 806 (D.C. 2011) (quoting *Markowitz v. United States*, 598 A.2d 398, 407 n.9 (D.C. 1991)). Only where at least one of several alternate theories of guilt presented at trial has been shown to be invalid – and where we thus cannot determine whether the trial judge found the defendant guilty based on a valid or an invalid theory – will we remand a case for clarification of the judge's general finding of guilt in the absence of a timely request in the trial court for special findings under Rule 23(c). *See Jones v. United States*, 16 A.3d 966, 970-71 (D.C. 2011).

More is required, however, when a party to a non-jury criminal trial makes a timely request for special findings under Rule 23(c), *i.e.* when special findings are requested before the trial judge has announced a general verdict of guilty or not guilty. Much like the detailed findings of fact and conclusions of law required in civil and family cases tried to the court without a jury, *see, e.g.*, Super. Ct. Civ. R. 52(a); Super. Ct. Dom. Rel. R. 52(a); Super. Ct. Adoption R. 52(a); Super. Ct. Dom. Viol. R. 9(c), special findings in a non-jury criminal trial inform an appellate court of the specific grounds relied on by the trial judge in reaching a verdict and enable the appellate court to undertake its review of the record with a clear understanding of the bases of the trial judge's decision. *United States v. Hogue*,

132 F.3d 1087, 1090 (5th Cir. 1998); *United States v. Snow*, 484 F.2d 811, 812 (D.C. Cir. 1973); *see generally* 25 MOORE'S FEDERAL PRACTICE § 623.05 (3d ed. 2014). Special findings thus operate on appeal much as jury instructions do in a case tried to a jury – they reflect the legal significance the trial judge attributed to particular facts and make it possible for the appellate court "to determine whether the judge correctly applied any presumption of law, or used appropriate legal standards." *United States v. Hussey*, 1 M.J. 804, 808-09 (A.F.C.M.R. 1976).

Special findings also serve an important access to justice function and advance the goal of procedural fairness in the criminal justice system. A clear statement by a trial judge explaining the ruling in a case informs the parties of the reasons underlying the court's decision and provides critical assurance to an unsuccessful litigant that positions advanced at trial have been considered fairly and decided on the merits in accordance with governing law. The resulting increase in transparency promotes acceptance of the court's ruling and fosters compliance with its requirements. *See Snow*, 484 F.2d at 812 (internal quotation omitted) ("The requirement that a trial judge prepare findings which will cast light on his reasoning is not a trivial matter. It is an important element of fairness to the accused. . . . The existence of a rationale may not make the hurt pleasant, or even just. But the absence, or refusal, of reasons is a hallmark of injustice.").

We have never decided what must be included in a set of special findings made in response to a timely request under Rule 23(c). We thus look to case law in the federal courts interpreting the identical federal rule. *See Smith v. United States*, 984 A.2d 196, 200 (D.C. 2009) ("This court has often analyzed Superior Court Rules in light of federal courts' analysis of their federal analogues."). Although scant, federal court case law suggests that a trial judge responding to a timely request for special findings under Rule 23(c) must make specific findings on all elements of the offenses charged and the defenses raised in the case and, at a minimum, on all disputed issues of fact and law fairly raised by the charges and defenses presented at trial. *See, e.g.*, *Snow*, 484 F.2d at 812 (requiring specific findings on all elements of every offense charged and every defense raised at trial); *Hussey*, 1 M.J. at 809 ("The special findings will usually include findings as to the elements of the offenses of which the accused may be found guilty, findings on the question of mental responsibility if raised by the evidence, and findings on special defenses reasonably in issue."); *see generally* Fed. R. Crim. P. 23(c) advisory committee's note (citing to *Connecticut v. Frost*, 135 A. 446, 449 (Conn. 1926), in which the appellate court held that a trial judge's findings in a criminal case tried to the court "should contain the subordinate facts found and then the conclusions reached from these subordinate facts").

We need not decide here whether special findings issued on request under Rule 23(c) always must include findings specific to every element of every offense charged by the government and every element of every defense raised by the defendant. It is sufficient in these circumstances to hold that where a party makes a timely request for special findings and, in the course of the proceedings, identifies with sufficient clarity the matters on which he seeks such findings, the trial judge must articulate findings specific to all issues of fact and law materially in dispute between the parties and fairly raised by the evidence and the party's request.

Mr. Saidi's trial counsel never specifically identified the underlying factual and legal issues on which he sought special findings in the trial court. Instead, counsel simply made a general request for special findings at the beginning of the trial and then focused his closing argument on an application of the evidence to the language of the standard jury instruction on the defense-of-property defense. It certainly would have been preferable – and of far greater assistance to the trial judge – had Mr. Saidi's counsel specified, at some point before the judge issued her ruling, the particular questions of fact and law relating to the defense-of-property defense on which Mr. Saidi sought special findings. Mr. Saidi's trial

counsel also could have complained about the incompleteness of the trial judge's findings at the time those findings were announced in open court; had counsel done so, the trial judge likely could have addressed the shortcomings of her ruling and avoided the need for this appeal and a remand more than a year later.

We nevertheless conclude that the disputed factual and legal issues we have addressed in this opinion were fairly raised by the combination of Mr. Saidi's request for special findings and his counsel's arguments concerning the defense-of-property defense. Although not specifically referred to in Mr. Saidi's request for special findings, questions relating to Mr. Wilson's authority to enter and remain in the second-floor apartment, Mr. Saidi's motivation in striking Mr. Wilson, and the reasonableness of the amount of force used by Mr. Saidi were materially disputed in the evidence and at least implicit in the arguments of the parties. The trial judge therefore was obliged to make specific findings on at least enough of the disputed issues to resolve Mr. Saidi's defense-of-property defense, and without such findings, we are unable to determine the bases of the judge's conclusion that the government disproved the defense beyond a reasonable doubt.

We accordingly vacate Mr. Saidi's conviction and remand the case to the Superior Court for further proceedings consistent with this opinion. In the

discretion of the trial judge, those further proceedings may include a re-opening of the trial record for the presentation of additional evidence or argument, or they may be limited to the judge's statement of additional findings based on the existing trial record. *See* D.C. Code § 17-306 (2012 Repl.).

*Vacated and Remanded*.