*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-822

ELAINE JONES, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED **11/09/2017**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CMD-9195-14)

(Hon. Ann O'Regan Keary, Trial Judge)

(Submitted September 29, 2016                    Decided  November 9, 2017)

*Rupa Ranga Puttagunta* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Michael J. Christin*, and *Lauren R. Bates*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and PRYOR, *Senior Judge*.

GLICKMAN, *Associate Judge*:    In September 2013, appellant Elaine Jones was homeless and slept at night in a cardboard box on the floor of a Metro train station.  On one such evening, a man who had camped next to her objected to her presence and, after kicking her, extended his feet onto her box and refused to

remove them. Hoping to induce him to withdraw, and having no other means at her disposal, Ms. Jones then took out her cigarette lighter and lit a corner of her cardboard box near where her tormentor had lodged his feet. When this gesture proved to be futile because the man ignored the small fire that she created, Ms. Jones put out the fire before it grew larger. The brief blaze harmed no one. However, for this conduct, Ms. Jones was found guilty after a bench trial of one count of simple assault[1] and one count of attempted possession of a prohibited weapon (i.e., the cigarette lighter).[2]

The issue before us is whether there was sufficient evidence to support those convictions. We conclude not. Specifically, we hold that the government did not present sufficient evidence to overcome Ms. Jones's defense that she lit the fire for the lawful purpose of defending her property from trespass and did not employ more force than was reasonably necessary or permissible to repel the intrusion.

**I.**

Two witnesses at trial described the altercation that resulted in the charges

---

[1] In violation of D.C. Code § 22-404 (a)(1) (2012 Repl.).

[2] In violation of D.C. Code §§ 22-4514 (b), 22-1803 (2012 Repl.).

against Ms. Jones: a bystander, called by the government, who had observed the incident, and Ms. Jones herself. There was no material conflict in their testimony, which established the following facts.

At around 10:00 p.m. on September 3, 2013, Ms. Jones, who was then sixty-five years of age, arrived at the entryway to the McPherson Square Metro Station, which was where she slept most nights. After changing her clothes in the bathroom, she placed her cardboard box in her usual spot and lay down in it. Another homeless person, a man named Rodney Livingston, was lying beside her. Ms. Jones described him as being about six feet tall, "muscular," and considerably bigger and stronger than she was. Mr. Livingston told her he "didn't want her there"; she refused to leave, telling him that this was where she normally stayed and that she had a right to stay there. Mr. Livingston then became physically aggressive. As Ms. Jones lay next to him in her box, he threw paper at her, kicked her a couple of times and, after repositioning himself, stretched his feet on top of her box and rested them right next to her face. Ms. Jones asked him several times to remove his feet but he would not do so.

Ms. Jones, who acknowledged in her trial testimony that she was "very frustrated" by Mr. Livingston's abuse, then sat up, pulled out her cigarette lighter,

and lit the corner of her cardboard box that was near Mr. Livingston's feet. She did this, she testified, "[h]oping it would scare him to move his feet," since "[m]ost sane people would move away from fire." The cardboard proved not to be very combustible, however. Ms. Jones characterized it at trial as responding to her lighter "like a cigarette" and "never bust[ing] into flame," while the government's witness described the ignition as being "very small, very small," and "like the wick from a piece of paper that cast off smoke." It did not induce Mr. Livingston to move his feet, and the government's witness saw Ms. Jones "quickly" put the fire out with her own hand without "further ado." Ms. Jones testified that she put some water on the "little fire" and "pat[ted]" it out "before it bust [sic] into flame" so that Mr. Livingston would not "catch on fire" as a result of his refusal to move his feet.

Mr. Livingston was not injured. The eyewitness to his encounter with Ms. Jones testified that no "material goods" were damaged (other than the corner of Ms. Jones's cardboard box). A fire investigator who responded to the Metro Station testified at trial that she saw two "burn marks" on Mr. Livingston's socks, which in her opinion were "consistent with a heat source, open flame."[3] A

---

[3] The investigator also observed "some burned cardboard boxes" and "minor . . . scorch marks" on an adjacent metal beam.

photograph introduced in evidence showed what the trial judge described on the record as a "singe mark" on the toe of each sock.[4]

In convicting Ms. Jones of simple assault and attempted possession of a prohibited weapon, the judge found that, by setting fire to the "flammable" cardboard box next to Mr. Livingston's feet, she intentionally used her cigarette lighter as a dangerous weapon in order to threaten Mr. Livingston with serious bodily injury and frighten him into moving away. The judge reasoned that a cigarette lighter "clearly is likely to inflict serious bodily injury on someone if it's used to set a fire" and that Ms. Jones was guilty of intent-to-frighten assault even though she did not "strik[e] or set[] fire to Mr. Livingston himself" and she extinguished the fire before it could do him any harm. The judge rejected Ms. Jones's "defense-of-property" justification for her actions on the ground that lighting the fire was "not a reasonable force in response" to Mr. Livingston's trespass on her property.[5]

---

[4] The judge found the evidence insufficient to show any actual damage to the socks or diminution in their value. For this reason, the judge found Ms. Jones not guilty of destruction of property.

[5] The government argues that the judge articulated two additional reasons for rejecting Ms. Jones's claim of defense of property: (1) that Mr. Livingston's intrusion on her property did not amount to an unlawful trespass, and (2) that Ms. Jones acted for a reason other than her desire to stop the intrusion, namely her

*(continued…)*

## II.

Under the common-law defense-of-property doctrine to which this jurisdiction continues to adhere, it was lawful for Ms. Jones to employ "as much force as [was] reasonably necessary" to eject him from her personal property, i.e., the cardboard box that was her bed.[6] Ms. Jones invoked that defense and it was "fairly raised" by the evidence that the reason she lit the fire was to eject a

_____

*(…continued)*

anger at his attempt to displace her from her usual resting spot. We disagree. In our view, the judge did not find there was no unlawful trespass or intrusion; nor would the evidence support such a finding, inasmuch as Mr. Livingston had no right to appropriate Ms. Jones's personal property for his own use. And while the judge did find that Ms. Jones was angered by Mr. Livingston's behavior, she more specifically found that her "motive" in setting the fire was to get Mr. Livingston "out of . . . her space for sleeping that night," and that Ms. Jones took the action she did only after Mr. Livingston was "not responsive" to her multiple requests that he remove his feet from her box.

[6] *Shehyn v. United States*, 256 A.2d 404, 406 (D.C. 1969) ("It is well settled that a person may use as much force as is reasonably necessary to eject a trespasser from his property, and that if he uses more force than is necessary, he is guilty of assault. This is true regardless of any actual or threatened injury to the property by the trespasser, although this would be a factor in determining the reasonableness of the force used." (footnote omitted)); *see also, e.g.*, *Gatlin v. United States*, 833 A.2d 995, 1008-09 (D.C. 2003) ("One is justified in using reasonable force to protect his [or her] property from trespass or theft, when he [or she] reasonably believes that his [or her] property is in immediate danger of such an unlawful interference and that the use of such force is necessary to avoid that danger.") (quoting 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.6 (2003)); *Criminal Jury Instructions for the District of Columbia*, No. 9.520 (5th ed. rev. 2016).

trespasser from her cardboard bed. The government therefore bore "the burden of proving beyond a reasonable doubt that [she] did not act reasonably in defense of [her] property."[7] The government contends it met that burden because the evidence showed that Ms. Jones used "extremely dangerous force" when she "ignited highly flammable material directly beneath Mr. Livingston's feet."[8] But these characterizations are exaggerated. Although we view the evidence in the light most favorable to sustaining the court's findings,[9] we must agree with Ms. Jones that the evidence was insufficient to support a finding that she employed unreasonable or excessive force in her effort to get Mr. Livingston to remove his feet from her bed.

As shown by the authorities cited in footnote 6, *supra*, "reasonable force" in the defense of property is generally understood to mean the amount of force that reasonably appears necessary to the lawful possessor of the property to prevent or promptly terminate the intrusion. Thus, it is not reasonable to use any force at all

---

[7] *Saidi v. United States*, 110 A.3d 606, 611 (D.C. 2015).

[8] Brief for Appellee at 14.

[9] *See Mihas v. United States*, 618 A.2d 197, 200 (D.C. 1992).

if the intrusion can be remedied by simply requesting the intruder to desist[10] or by seeking the assistance of police who are on the scene.[11] But when such options are not available, or have been tried without success, resort to some force is permissible; the rightful possessor is not obliged to acquiesce in the trespass (or the trespasser's wrongful demands) in order to avoid such resort. We have recognized that there may be circumstances in which even the infliction of "significant bodily injury" to protect or recover one's property may be justified.[12] It is never reasonable or justifiable, however, to use deadly force – force likely to cause death or "serious" bodily harm or injury – merely to protect property, even if the intrusion or danger to the property cannot otherwise be prevented.[13] This is because "[t]he preservation of human life, and of limb and member from grievous harm, is of more importance to society than the protection of property."[14]

---

[10] *See* LaFave, *supra* note 6.

[11] *See Gatlin*, 833 A.2d at 1009.

[12] *See Brown v. United States*, 139 A.3d 870, 876 (D.C. 2016).

[13] *Id.* We use the terms "serious bodily harm" and "serious bodily injury" interchangeably to mean "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty." *Id.* at 875-76 (quoting *Nixon v. United States*, 730 A.2d 145, 149-50 (D.C. 1999)).

[14] *Simpson v. State*, 59 Ala. 1, 14 (1877) (cited by LaFave, *supra* note 6).

We evaluate the lawfulness of Ms. Jones's conduct in accordance with these principles. First, before attempting to recover her bed from Mr. Livingston by forceful means, she repeatedly requested him to remove his feet. He ignored her requests and maintained his feet on her bed (and in her face). Second, there were no police officers on the scene from whom Ms. Jones could obtain help.

Third, in resorting to self-help as she did, Ms. Jones did not physically harm Mr. Livingston at all; nor did she attempt to do so. She did not try, for example, to burn or set fire to him (or to his clothes or other belongings) with her cigarette lighter. In lighting the corner of her own cardboard box, all Ms. Jones really did was try to frighten Mr. Livingston into abating his intrusion on her bed. None of the defense-of-property cases in which this court has found evidence of excessive force involved a mere intent-to-frighten assault like this one; they all involved actual batteries of the alleged thief's or trespasser's person.[15] In evaluating

---

[15] *See Brown,* 139 A.3d at 879 (holding it "surely unreasonable" for defendant to try to recover his belongings from the person who allegedly took them by striking her in the head with the blunt end of a hatchet "with enough force to knock her down, cause internal bleeding in her brain, and create an external wound requiring nine stitches to repair"); *Saidi,* 110 A.3d at 612 ("[E]ven if Mr. Wilson was a trespasser at the time Mr. Saidi punched him in the chest, and even if Mr. Saidi struck Mr. Wilson in an effort to get him to leave the second-floor apartment, the evidence supported a finding that Mr. Saidi used excessive force in the circumstances."); *Gatlin,* 833 A.2d at 1003, 1010 (unreasonable to grab and punch a person's arms to retrieve a notebook).

whether excessive force was used in defense of person or property, we do not equate the mere threat of physical injury, even with a deadly implement, with the actual infliction thereof.[16] Nor, as far as we can tell, have courts in other jurisdictions equated the two.[17]

Fourth, the fire that Ms. Jones lit was too small and short-lived to pose a

---

[16] *See Douglas v. United States*, 859 A.2d 641, 642 (D.C. 2004) ("The mere display of a deadly weapon to ward off an attack is not necessarily to be equated to the actual use of deadly force for purposes of evaluating whether the force used was excessive."); *accord Williams v. United States*, 90 A.3d 1124, 1128 (D.C. 2014).

[17] *See* LaFave, *supra* note 6, § 10.4 (a) ("[M]erely to threaten death or serious bodily harm, without any intention to carry out the threat, is not to use deadly force, so that one may be justified in pointing a gun at his attacker when he would not be justified in pulling the trigger."); *United States v. Black*, 692 F.2d 314, 318 (4th Cir. 1982) (explaining that the law of self-defense permits one to brandish a knife to repel an attack that does not threaten death or serious bodily injury; "a danger which is not so great as to justify an actual killing in self-defense may nevertheless be serious enough to justify an unexecuted threat to use deadly force"). There appear to be few reported defense-of-property cases on point. In one case we have found, the appellate court reversed the assault conviction of a defendant who brandished a knife and threatened to use it against the would-be taker of his saddle, on the principle that "[a] threat to use a deadly weapon, with the power to do it, may often be justifiable, when a battery with the same would not be." *State v. Yancey*, 74 N.C. 244, 245 (1876); *see also State v. Williams*, 433 A.2d 765, 768-70 (Me. 1981) (holding that prohibition on use of deadly force to defend property does not extend to mere threat of deadly force); *State v. Lockwood*, 603 P.2d 1231, 1234 (Or. Ct. App. 1979) (defendant who threatened putative vandals with an unloaded pistol in order to protect his property from criminal trespass or mischief *held* entitled to instruction on use of reasonable force in defense of property).

substantial risk of harm to Mr. Livingston. The fire never got out of control and Mr. Livingston easily could have moved to avoid it. And as soon as it became clear that Ms. Jones's attempt to frighten him was not working, she put the fire out. She did not persist in using force for longer than was reasonable.

For these reasons, we conclude that the evidence was insufficient to prove that Ms. Jones responded with excessive force to Mr. Livingston's invasion of her bed. As it was lawful for Ms. Jones to use reasonable force to defend her property, her conviction for attempt-to-frighten assault cannot stand. The same holds true for her conviction for attempted possession of a prohibited weapon in violation of D.C. Code § 22-4514 (b) ("PPW (b)"). In a prosecution for that offense, "the government must prove, beyond a reasonable doubt, that the defendant possessed the weapon with the specific intent to use it unlawfully."[18] This means the government had to defeat Ms. Jones's claim that she used her cigarette lighter in lawful defense of her property in order to convict her of PPW (b).[19] Because the

---

[18] *See Stroman v. United States*, 878 A.2d 1241, 1245 (D.C. 2005).

[19] *Cf. McBride v. United States*, 441 A.2d 644, 649-50 (D.C. 1982) (explaining that possession for lawful self-defense is a defense to a charge of PPW (b)). The precise question of whether a claim of defense of property is available as a defense to PPW (b) was one we left unanswered in *Doby v. United States*, 550 A.2d 919, 920 (D.C. 1988), but in principle lawful defense of property should be a

*(continued…)*

government failed to present sufficient evidence to overcome her defense-of-property claim, Ms. Jones's PPW (b) conviction must be reversed.

## III.

For the foregoing reasons, we reverse appellant's convictions.

*So ordered.*

---

*(…continued)*
defense to PPW (b) for the same reason lawful self-defense is (as the government does not dispute in the instant appeal).