*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CM-0171

FEMI AKINBI, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CMD-006607)

(Hon. Laura Crane, Trial Judge)

(Submitted April 10, 2024                    Decided August 29, 2024)

*Justin A. Okezie* was on the brief for appellant.

*Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *Elizabeth H. Danello*, *Anthony Cocuzza*, and *Anne Y. Park*, Assistant United States Attorneys, were on the brief for appellee.

Before HOWARD and SHANKER, *Associate Judges*, and WASHINGTON, *Senior Judge*.

WASHINGTON, *Senior Judge*: Appellant Femi Akinbi seeks reversal of his misdemeanor conviction for attempted threats, a crime for which he was sentenced to thirty days of incarceration, execution of sentence suspended as to all, and six months of unsupervised probation. He asserts that the government presented insufficient evidence to obtain the conviction because it failed to disprove that he

acted in defense of his property. The government counters that Akinbi's appeal should be subject to plain error, and further, that he was not entitled to the defense as the evidence did not fairly raise the issue. We conclude that there was no error, let alone plain error, and affirm.

## I.     Background

In the early evening on November 6, 2022, Dari Karimian, along with his real estate partners, Afolake Shokunbi and Jahan Amini, went to a joint property of theirs, where Akinbi resided, to discuss an ongoing rental dispute. Shokunbi was brought along to mediate the dispute, which to that point had primarily been between Akinbi and Karimian. Shokunbi, like Akinbi, was Nigerian and they spoke the same native language, as well as English. Upon arriving at the house, of which Akinbi was the sole occupant, the three individuals entered the home without permission, and proceeded to Akinbi's bedroom where they knocked on the door. At the time of their entry, Akinbi was asleep, and was awoken by the knocking. He had not been given prior notice that Karimian would be coming, and as a result expressed anger at the intrusion.

In response to his anger, the three individuals left the home and waited outside for Akinbi to get dressed. Upon stepping outside, Akinbi called Shokunbi over to speak with him away from the other two. He attempted to explain to

Shokunbi that while he understood that she was just trying to help Karimian, Akinbi felt that Karimian was "a terrible guy" who was trying to unjustifiably force Akinbi from the residence. However, after the parties were unable to reach a resolution, Akinbi loudly said "if you come in here, I'll blow your f*cking head off." Shokunbi and Amini both testified that, in addition to threatening them, Akinbi lifted up his shirt to reveal the butt of a black firearm before reentering the home.

Shokunbi regrouped with the other two on the sidewalk and about ten minutes later, Akinbi left the residence on a bicycle. Akinbi returned shortly thereafter, and there was another verbal exchange between Akinbi and the three individuals, which was partially caught on video. Shokunbi expressed shock at the previous threat, to which Akinbi responded by telling her to call the police. The video ended with Karimian telling Akinbi, "you're not going to win this, motherf*[c]ker. You don't know who you're f*cking with."

After Akinbi re-entered the home, the three individuals flagged down a passing police vehicle. Officers responding to the scene were given permission by Akinbi to search the home, and they recovered a black airsoft BB gun in the bedroom, although Akinbi claimed that it was just one of his godson's toys, and that there were others like it in the bedroom.

Akinbi was arrested and charged with one count of attempted threats against Shokunbi. Following a bench trial, the trial court rejected Akinbi's argument that the threat was only directed at Karimian, and found that a reasonable person in Shokunbi's position would believe that the threat was also directed at her. The trial court delivered its sentence that same day.

## II.    Discussion

Akinbi asserts that the government failed to prove that he was not justified in threatening Shokunbi because he was defending his property from her unlawful trespass. The government counters that Akinbi never raised this defense at trial, and even if he had, there was insufficient evidence to warrant its consideration.

## A.

Prior to addressing the merits of Akinbi's claim, we must first address our standard of review. Where a party neglects to raise a claim before the trial court, we review for plain error. *Miller v. United States*, 209 A.3d 75, 78 (D.C. 2019). "Under the test for plain error, an appellant must show (1) error, (2) that is plain, and (3) that affected [the appellant's] substantial rights." *Id.* (brackets in original) (quoting *Fortune v. United States*, 59 A.3d 949, 954 (D.C. 2013)). "Even if all three of these conditions are met, this court will not reverse unless (4) the error

seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

While Akinbi concedes that he did not directly raise the defense-of-property defense below, he asserts that he nonetheless escapes this more stringent analysis because he filed a motion for judgment of acquittal ("MJOA") at the close of the government's case, which preserved any arguments regarding what the government had to prove at trial, including that he did not act in defense of his property. We have previously acknowledged that a general, as opposed to a specific, MJOA "is deemed 'sufficient to preserve the full range of challenges' to the sufficiency of the evidence." *Newby v. United States*, 797 A.2d 1233, 1238 (D.C. 2002) (quoting *United States v. Hammoude*, 51 F.3d 288, 291 (D.C. Cir. 1995)). However, this longstanding rule is in part attributed to the fact that the parties are on full notice of what the government must prove to make its prima facie case. *See id.*

It remains an open question in this jurisdiction whether a defendant who raises a specific ground supporting his MJOA is able to claim preservation for any and all sufficiency challenges on appeal. *E.g.*, *Covington v. United States*, 278 A.3d 90, 95 (D.C. 2022) ("It is less clear, however, what arguments are preserved by a more targeted MJOA . . . ."). There is a split among the federal circuits on

this issue. The majority have adopted the rule that a general MJOA can preserve unraised sufficiency challenges, while a specific MJOA cannot preserve unraised arguments on appeal. *See United States v. Marston*, 694 F.3d 131, 134 (1st Cir. 2012) ("[W]hen a defendant chooses only to give specific grounds for a[n MJOA], all grounds not specified are considered waived . . . ."); *United States v. Williams*, 974 F.3d 320, 361 (3d Cir. 2020) (same); *United States v. Maez*, 960 F.3d 949, 959 (7th Cir. 2020) (same); *United States v. Spinner*, 152 F.3d 950, 955 (D.C. Cir. 1998) (same); *see also United States v. Fuertes*, 805 F.3d 485, 497 (4th Cir. 2015) (restricting preservation of sufficiency challenges to factual or evidentiary, but not legal, arguments cabined within a sufficiency challenge). *But see United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007) (restricting appellant defendants to "the particular basis on which acquittal is sought" on appeal, even for general MJOAs). Only the Second Circuit has permitted defendants to preserve all sufficiency challenges, regardless of the specificity with which the MJOA was raised. *See United States v. Gjurashaj*, 706 F.2d 395, 399 (2d Cir. 1983) (holding that, even where the defendant filed a specific MJOA, a "defendant need not specify the ground of the motion in order to preserve a sufficiency claim for appeal."); *see also United States v. Barrett*, 102 F.4th 60, 71 (2d Cir. 2024).

We have expressed interest in the approach followed by the Second Circuit but we have never explicitly adopted it. *See Campbell v. United States*, 163 A.3d

790, 793 (D.C. 2017) ("[I]t is not clear why, if a general MJOA is sufficient to preserve all arguments challenging the sufficiency of the evidence, the addition of specific arguments in support of the motion should operate to un-preserve other arguments"). However, Akinbi's case, like Campbell's, does not squarely present us with an opportunity to determine which approach to follow. While Akinbi's MJOA was specific and unrelated to his present claim,[1] on appeal he contends it preserved his sufficiency argument even with respect to an unraised affirmative defense; namely, the defense-of-property defense.[2] Were we to permit a specific, and unrelated, MJOA to preserve for appeal a sufficiency challenge related to an affirmative defense, it would mark a dramatic expansion of what to this point has

---

[1] Following the close of the government's case, Akinbi's defense counsel raised a specific evidentiary-based MJOA, arguing that as Shokunbi expressed that she would not go back into the house, Akinbi's statement was an invalid conditional threat, and Akinbi's threat was only directed at Karimian. Following Akinbi's testimony, defense counsel renewed that motion, but was cut off from explaining the basis of his motion as the trial court wanted to discuss legal issues in closing arguments. In closing, defense counsel never attempted to make a general MJOA, but rather counsel maintained that the threat was solely directed at Karimian.

[2] Akinbi's case poses a unique procedural question because while the defense-of-property defense is an affirmative defense, the government retains the ultimate burden of persuasion. *Saidi v. United States*, 110 A.3d 606, 611 (D.C. 2015). As we have stated that sufficiency of the evidence encompasses legal challenges to what the government must prove at trial, *Carrell v. United States*, 165 A.3d 314, 326 (D.C. 2017) (en banc), Akinbi is able to style his appeal as a challenge to the sufficiency of the evidence, even though it functionally challenges alleged instructional error, an objection that could never be preserved by an MJOA.

been a relatively narrow doctrine. Further, to adopt this approach would be entirely out of step with most, if not all, of our state and federal counterparts, and ultimately ungrounded from the traditions of the general rule.

As noted above, most federal circuits do not permit a specific MJOA to preserve unraised sufficiency challenges.[3] However, even the Second Circuit, which has adopted the broadest interpretation of the preservation rule, has limited its application to negation defenses that allege "that the government had failed to establish an essential element of the crime charged." *United States v. Gjurashaj*, 706 F.2d 395, 399 n.5 (2d Cir. 1983). In fact, many federal circuits consider unraised affirmative defenses simply waived on appeal. *See, e.g.*, *United States v. Ciavarella*, 716 F.3d 705, 733 (3d Cir. 2013); *United States v. Boccone*, 556 Fed. Appx. 215, 238 n.6 (4th Cir. 2014) (unpublished); *United States v. Greenberg*, 596 Fed. Appx. 550, 552 (9th Cir. 2015) (unpublished).[4]

---

[3] Some circuits add even further hurdles to defendants when reviewing affirmative defenses. The Seventh Circuit has required defendants raising *preserved* sufficiency challenges related to an affirmative defense to show that the evidence "is so one-sided that a rational jury could not reach any decision other than a finding of not guilty based on the defense asserted." *United States v. Dvorkin*, 799 F.3d 867, 879-80 (7th Cir. 2015) (internal quotation marks omitted).

[4] This approach has also been widely adopted by state courts. *See Santana v. State*, No. 1146, 2024 WL 226590, at *9 (App. Ct. Md. Jan 22, 2024) ("If a

We expect trial courts to ensure that there is evidence sufficient to meet the prima facie elements of a crime, which gives rhyme and reason to the preservation rule. *Cf. Newby*, 797 A.2d at 1238. However, that rationale does not extend to unraised affirmative defenses. Thus, while we again leave for another day the question of whether a specific MJOA can preserve unraised sufficiency challenges to a government's prima facie case, we have no difficulty holding that a limited and specific MJOA, that is unrelated to the claim on appeal, cannot preserve a

---

defendant fails to timely raise the statute of limitations as an affirmative defense at trial, 'the defense is waived.'" (quoting *Brooks v. States*, 584 A.2d 82, 88 (Md. 1991))); *State v. Jackson*, 263 P.3d 540, 552 (Utah 2011); *State v. Cotton*, 295 S.W.3d 487, 490 (Mo. Ct. App. 2009) ("[T]he burden was on the defendant to affirmatively act to *raise the defense in the first place*, as opposed to affirmatively act to *waive* the defense. Such is the essence of an affirmative defense."). *But see People v. Williams*, 981 P.2d 42, 44 (Cal. 1999) (declining to rule on whether the statute of limitations is an affirmative defense, but rejecting the government's contention that the defense would be automatically waived if not raised); *Chew v. United States*, 314 A.3d 80, 91 (D.C. 2024) (unlawful possession of a firearm) (Easterly, J., concurring) (explaining that in *United States v. Olano*, 507 U.S. 725 (1993), the Supreme Court "clarified that '[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' The two carry different consequences; 'forfeiture, as opposed to waiver, does not extinguish an "error"' or preclude further review. Instead, forfeiture alters how that claim may be reviewed on appeal: forfeited errors are reviewable only for plain error." (citations omitted) (quoting *Olano*, 507 U.S. at 733)).

We have applied a waiver rule to affirmative defenses in the civil context, but have not extended the principle to criminal appeals. *See, e.g., Mitchell v. Gales*, 61 A.3d 678, 687 (D.C. 2013) (res judicata); *Feldman v. Gogos*, 628 A.2d 103, 104 (D.C. 1993) (statute of limitations).

challenge to the sufficiency of an unraised affirmative defense.  In this case, the claim of defense of property is, if not waived, at a minimum forfeited; and appellant cannot overcome the forfeiture because he has not shown any of the four requirements for plain-error treatment.

**B**.

We now turn to the merits of Akinbi's appeal.

The District of Columbia has adopted the common law interpretation of the defense-of-property defense.  *Saidi v. United States*, 110 A.3d 606, 611 (D.C. 2015).  In this jurisdiction, it is lawful for someone to use reasonable force to separate someone else from his or her lawfully held property.  *Jones v. United States*, 172 A.3d 888, 891 (D.C. 2017) (personal property); *Shehyn v. United States*, 256 A.2d 404, 406 (D.C. 1969) (real property).  In determining whether a defendant's actions were "reasonably necessary," the fact finder looks to the totality of the circumstances present, including those leading up to the threatened trespass.  *See Gatlin v. United States*, 833 A.2d 995, 1010-11 (D.C. 2003) (assessing a defendant's reasonableness by considering her statements that suggested she was more focused on recovering a notebook within the victim's possession than preventing further trespass).

We have previously supported the application of the defense-of-property defense against an ongoing trespass, even where the trespasser posed no specific threat to property beyond the trespass itself. *See Shehyn*, 256 A.2d at 406 (noting the doctrine applies "regardless of any actual or threatened injury . . . although this would be a factor in determining the reasonableness of the force used."). However, as noted by the *Shehyn* court, not all uses of force can be considered reasonable given the circumstances present. *Id.* "[I]t is not reasonable to use any force at all if the intrusion can be remedied by simply requesting the intruder to desist or by seeking the assistance of police who are on the scene." *Jones*, 172 A.3d at 891-92. In *Jones*, when the defendant was faced with mere trespass, we supported her use of a cigarette lighter to scare away the trespasser, but only after finding she first requested the trespasser to desist to no avail. *Id.* at 892. In fact, we specifically noted that the defendant's use of force was "too small and short-lived to pose a substantial risk of harm . . . [a]nd as soon as it became clear that [her] attempt to frighten [the trespasser] was not working," she herself stopped. *Id.* at 893. Thus, while some force may be justified to eject a trespasser, there is a careful sliding scale of reasonableness to which parties must adhere prior to resorting to forceful means.

A defendant becomes entitled to a defense-of-property instruction provided the evidence fairly raises the issue. *Saidi*, 110 A.3d at 611. Once this occurs, the

burden shifts to the government to prove beyond a reasonable doubt that the defendant did not act reasonably in defense of his property. *Id.*

It is a relatively low bar for evidence to "fairly raise" a defense; a defendant will be entitled to an instruction provided each element of the theory "is supported by any evidence." *Graves v. United States*, 554 A.2d 1145, 1147 (D.C. 1989) (internal quotation marks omitted). At minimum, "there must exist evidence sufficient to find in the defendant's favor"; "[i]t is not correct that any evidence, however weak, entitles the defendant to an instruction." *McCrae v. United States*, 980 A.2d 1082, 1086 n.4 (D.C. 2009). "However, where there is no factual or legal basis for a requested instruction, it is not error for the trial court to refuse to instruct the jury on that defense." *Id.* at 1086. "Once the defendant requests an instruction, it is not necessary that the evidentiary basis for the instruction stem from the defendant's evidence; it may also be derived from the government's evidence." *McClam v. United States*, 775 A.2d 1100, 1104 (D.C. 2001). Accordingly, when reviewing the record we look at the entirety of the evidence offered to determine whether Akinbi was entitled to an instruction on the defense-of-property.

The evidence presented at trial shows that the three complaining witnesses trespassed onto Akinbi's property, which, as noted above, can support applying the

defense-of-property defense under the appropriate circumstances. *See Jones*, 172 A.3d at 891. However, at the time of Akinbi's threat, he was not defending his property from an ongoing trespass—the trespassers had already voluntarily left his home and were waiting for him outside. Thus, the defense would only be applicable if he reasonably believed his threat was necessary to prevent some future trespass.

As to that narrower question, Akinbi's actions were categorically unreasonable given the circumstances. Akinbi may have had some reason to believe there existed a threat of future trespass. At the time, the dispute remained unresolved and it was not the first time that at least Karimian had trespassed onto Akinbi's property. However, Akinbi had good reason to believe that his threat was unnecessary; namely, in response to his anger at their intrusion, the trespassers left peacefully. *See Jones*, 172 A.3d at 891-92. This alone would be sufficient evidence to find the subsequent threat unreasonable.

Beyond sufficiency, the nature and scope of Akinbi's threat demonstrate that no reasonable fact finder could find in his favor. First, while Akinbi's actions in this case were limited to a threat, the substance of the threat was to kill the three trespassers, an action that is never permissible under a defense-of-property theory. *Brown v. United States*, 139 A.3d 870, 876 (D.C. 2016). Second, Akinbi was

charged in this case with threatening Shokunbi—not the other two trespassers. While Karimian may have trespassed onto Akinbi's property before, there was no evidence of any ongoing hostilities between Shokunbi and Akinbi. As such, Shokunbi had done nothing to demonstrate to Akinbi that any threat of a violent nature was "reasonably necessary" to prevent future trespass. *See Jones*, 172 A.3d at 891. Because Akinbi's actions were a far cry from the tailored actions that have previously supported a claim of defense-of-property, no fact finder could reasonably find in his favor. Therefore, as the evidence could not have made out a prima facie defense, Akinbi would not have been entitled to claim the defense. [5]

Since the evidence did not fairly raise the defense-of-property defense, the trial court did not err in failing to consider the affirmative defense. Thus, Akinbi cannot demonstrate plain error in this case. *See, e.g.*, *Kinane v. United States*, 12 A.3d 23, 27 (D.C. 2011).

---

[5] Our holding today should not be construed to bar the application of the defense-of-property defense from all threats to deter future trespass. In the present case, the minimal danger posed by the trespass, the reason to believe it would not occur again, and the extreme nature of Akinbi's threat all counsel against the defense's application. However, the touchstone of the defense-of-property defense is reasonableness. *See Jones*, 172 A.3d at 893. There may be some future case where a defendant is faced with repeated trespasses, such that he reasonably believes that a threat is necessary to prevent a future trespass. Provided the nature of his threat is tailored to the danger posed by the threatened trespass, the defense-of-property may be a viable defense.

For the foregoing reasons, we affirm Akinbi's conviction.

*So ordered.*