# United States Court of Appeals
## For the First Circuit

No. 11-2100

UNITED STATES OF AMERICA,

Appellee,

v.

RAMIE MARSTON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro,  U.S. District Judge]

Before

Boudin, Hawkins[*] and Dyk,

Circuit Judges.

Behzad Mirhashem, Federal Defender Office, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
John P. Kacavas, United States Attorney, was on brief for appellee.

September 20, 2012

---

[*]Of the Ninth Circuit, sitting by designation.

**BOUDIN**, **Circuit Judge**.  Ramie Marston appeals her convictions, after a jury trial, for two counts of bankruptcy fraud.  The convictions stemmed from a pro se petition for bankruptcy that Marston filed in March 2009 under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 et seq. (2006).  The prosecution alleged that Marston failed to include in the petition information related to her past fraudulent use of credit cards that she obtained under the names of two acquaintances--Susan Blake and Kristy Kromer.

A debtor who files such a bankruptcy petition has to identify  "All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names)."  Marston wrote "Marston, Robbi"  in answer to that question, but she did not mention the names of Susan Blake or Kristy Kromer.  She then signed under penalty of perjury that the information she provided in the petition was "true and correct."

A debtor must also identify creditors of different classes in separate schedules.  In Schedule E, which asks for all creditors with unsecured priority claims, Marston listed Susan Blake as holding a $50,000 claim incurred on February 3, 2009, of which $46,000 was entitled to priority.  In Schedule F, which asks for all creditors holding unsecured nonpriority claims, Marston listed Susan Blake as holding a disputed $50,000 claim incurred on September 22, 2007.  Marston made no reference to the credit card

issuers that had issued the cards in Susan Blake's name.  Again, Marston's signature under penalty of perjury represented that the information in the schedules was "true and correct to the best of my knowledge, information, and belief."

Eventually, the petition was dismissed on Marston's own motion after the United States Trustee challenged her right to a discharge.  On April 27, 2011, Marston was charged with five counts of bankruptcy fraud, 18 U.S.C. § 152, each count alleging that she had made a false statement in her application or schedule.  The two counts ultimately submitted to the jury alleged as follows:

> -- Count One: that Marston had used the names Kristy Kromer and Susan Blake but knowingly and fraudulently failed to disclose this as required in the petition.

> -- Court Four: that Marston knowingly and fraudulently failed and refused to disclose debts to Bank of America, BMW Bank of North America, and American Express.

The government's theory as to the first count was that Marston had used the names of her two friends, Blake and Kromer, in credit card applications without their approval in order to secure cards with which Marston then made unauthorized purchases in their names; as to the fourth count, its theory was that the credit card issuers had claims against Marston for purchases made with those accounts.  The jury convicted on both counts and Marston was ultimately sentenced to concurrent terms of 37 months imprisonment and three years supervised release for each count, as well as a

statutory $100 special assessment imposed separately for each count.

Marston now appeals, contending that the evidence was insufficient for a reasonable jury to convict on either count. In the course of her Rule 29 motion at trial, Marston made a general objection to the adequacy of the evidence and also pointed to certain specific concerns about the evidence of materiality and mens rea.[1] Following the Rule 29 motion, the district court conducted a detailed analysis of those concerns as well as of the evidence of falsity, and then denied the motion.

A false oath conviction under 18 U.S.C. § 152(2) requires the government to prove (1) the existence of a bankruptcy proceeding; (2) that the defendant made a false statement in that proceeding under penalty of perjury; (3) that the false statement concerned a material fact; and (4) that the defendant made the false statement knowingly and fraudulently. United States v. Cutter, 313 F.3d 1, 4 n.4 (1st Cir. 2002). See also Metheany v. United States, 390 F.2d 559, 561 (9th Cir.), cert. denied, 393 U.S. 824 (1968) (same elements restated under five headings).

Although Marston now attacks the adequacy of the evidence in several different ways, she does not deny that she fraudulently

---

[1]Marston put on no case of her own and so no issue arises as to the need to renew the motion after the close of all the evidence. See United States v. Hernández, 218 F.3d 58, 63 n.3 (1st Cir. 2000), cert. denied, 531 U.S. 1103 (2001).

secured credit cards by listing her friends, without their permission, as the applicants or co-applicants and that she made purchases with those accounts. The government offered substantial evidence of the unauthorized applications, issuance of the cards, and Marston's use of them to make purchases; and we review the evidence in the light most favorable to the government. United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009).

Marston apparently met Kristy Kromer while both women were working at an insurance agency in Nevada. Kromer thereafter discovered, among other things, that a Chase Visa card had been taken out in her name with an address corresponding to Marston's residence in Henderson, Nevada and that a Certegy loan credit card had been issued under her name with Marston listed as the co-borrower. A later search of Marston's home in New Hampshire revealed that several other credit cards had also been opened in Kromer's name but mailed to Marston's addresses in Nevada and New Hampshire.

The evidence as to Susan Blake is more circumscribed because the government, instead of presenting a full scale case, accepted a stipulation in which Marston admitted inter alia that she had possessed credit cards bearing the names of both Marston and Blake, that she made purchases with those cards never authorized by Blake, and that the "fraudulent liabilities incurred in Blake's name by Marston totaled approximately $61,545."

Specific credit card issuers were identified in the stipulation, including the ones named in the indictment on Count Four.

Although appellate review of preserved sufficiency claims is de novo, albeit taking the evidence in the light most favorable to the verdict, the government argues that several of Marston's objections were not specifically identified in the Rule 29 motion so that their review should be only for "'clear and gross' injustice." United States v. Upham, 168 F.3d 532, 537 (1st Cir.), cert. denied, 527 U.S. 1011 (1999) (quoting United States v. Greenleaf, 692 F.2d 182, 185 (1st Cir. 1982)). The law as to preserving sufficiency claims differs somewhat from the requirements for most objections.

In most circuits, the rule is that a general challenge to the adequacy of the evidence preserves for de novo review "the full range of challenges, whether stated or unstated," United States v. Hammoude, 51 F.3d 288, 291 (D.C. Cir.), cert. denied, 515 U.S. 1128 (1995),[2] and we have suggested that the same rule applies in this circuit as well. See Slater v. United States 562 F.2d 58, 59 (1st Cir. 1976). By contrast, when a defendant chooses only to give specific grounds for a Rule 29 motion, all grounds not specified are considered waived and are reviewed under Upham's less forgiving

---

[2]See also United States v. Chance, 306 F.3d 356, 369 (6th Cir. 2002); United States v. Hoy, 137 F.3d 726, 729 (2d Cir.), cert. denied, 525 U.S. 850 (1998); 2A Wright & Henning, Federal Practice and Procedure § 466, at 356 n.2 (2000). But see United States v. McDowell, 498 F.3d 308, 312 (5th Cir. 2007).

"clear and gross injustice" standard.  See United States v. Pena-Lora, 225 F.3d 17, 26 n.5 (1st Cir. 2000), cert. denied, 537 U.S. 877 (2002); United States v. Belardo-Quinones, 71 F.3d 941, 945 (1st Cir. 1995).

Marston's Rule 29 motion could be viewed as straddling both of these categories.  Her counsel began with what taken alone is purely a general objection to the government's evidence:

> Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, I respectively move that Counts 1, 2, 3 and 4 be subjected to a directed verdict of acquittal on the grounds that the government has failed to meet its constitutional obligation to prove each of the essential elements beyond a reasonable doubt.

But the situation is slightly muddied because Marston's counsel continued with specific objections relating both to scienter and materiality without making clear that these were merely illustrative and without mentioning the other attacks now made on appeal:

> The essential element that I submit that they have not proved beyond a reasonable doubt, the one I want to focus on, is the obligation that they have first to show that my client's conduct  as alleged in each of those four counts was knowing and fraudulent, and secondly, their obligation to prove that the omissions...in my client's bankruptcy petition were material...and for those reasons I move for directed verdict of acquittal.

Again, standing alone, this language seems to express specific objections to the government's evidence that would constitute a waiver of all unspecified challenges.

There is good reason in case of doubt to treat an ambiguous motion like this one as "general" in the sense that it preserves all grounds. It is helpful to the trial judge to have specific concerns explained even where a general motion is made; and to penalize the giving of examples, which might be understood as abandoning all other grounds, discourages defense counsel from doing so and also creates a trap for the unwary defense lawyer. The tendency would be to encourage general objections without examples.

This situation arises only because general objections are permissible on Rule 29 motions. Ordinarily, the law calls on counsel to make specific objections which state the grounds for or scope of the objection, e.g., objections to evidence or instructions, in order to aid the trial judge and avoid unnecessary retrials. But the practice of allowing general Rule 29 objections is well accepted and the retrial problem does not arise if the motion is granted.

As it happens, the judge in this case seemingly understood Marston's challenge as a general one. After Marston's counsel announced his Rule 29 motion in the language quoted above, the judge replied:

> I guess I have a more fundamental question, which is have they proved even...falsity to the alleged portions of the bankruptcy filings. So let's start with that and then let's move on to -- what I hear you saying is I'm challenging mens rea and materiality.

> Before you even get to mens rea and materiality you have to demonstrate falsity, and I want to be clear as to what counts falsity has been sufficiently demonstrated and then go on and ask whether there's evidence of materiality and mens rea.

He then went on to examine the sufficiency of the government's evidence as to each element of the four remaining counts. That the trial judge considered such a ground would alone justify review, "as if such a motion had been made." United States v. Moynagh, 566 F.2d 799, 802 (1st Cir. 1977), abrogated on other grounds by United States v. Nieves-Burgos, 62 F.3d 431, 436 (1st Cir. 1995).

With respect to Count One, Marston's attack is several-fold: even positing that Marston had fraudulently applied for and also used credit cards in the names of her two friends, she argues that (1) this did not call for the listing of such names as ones "used by" Marston; (2) the omissions were immaterial since they would not have lead to discovery of assets relevant in bankruptcy; and (3) the evidence of fraudulent intent in omitting the names was insufficient.

The first objection rests on the view that the language of the petition did not call for Marston to reveal other people's names that she had entered on fraudulent credit card applications and then presented as her own when using the cards she received or, at least, that the question in the bankruptcy application was wholly unclear as to whether such a deployment of another's name was "use." In our view, both branches of this attack fail: the

-9-

language did call for Blake and Kromer's names and it was in no way fatally ambiguous.

True, "use" is a word that has various layers of meaning, but certainly an individual literally "uses" another person's name by entering it on a credit card application or presenting it as one's own in making purchases. This is not so different than using another person's name as a trade name--say, the deceased founder of one's company--save that this "use" is fraudulent and that one permissible. The parenthetical's reference to trade names, however, is neither necessary to our conclusion nor helpful to Marston although she urges the contrary.

Marston argues that the parenthetical references to "married, maiden, and trade names" confine the meaning of "use" under the ejusdem generis canon; but the canon is weakest, and only dubiously applicable, where as here the general term comes first. Compare American Sur. Co. of N.Y. v. Marotta, 287 U.S. 513, 517 (1933) with United States v. McKelvey, 203 F.3d 66, 71 (1st Cir. 2000). Indeed, as already noted, the more specific examples in the question can be used effectively against Marston herself by way of analogy to trade names.

Neither is Marston's proposed interpretation saved by her argument that the petition only asked for names "used by the Debtor in the last 8 years," and that it therefore could be read only to include the names under which she might have previously filed for

bankruptcy, as a means to enforce the prohibition on successive discharges. See 11 U.S.C. § 727(a)(8). Obviously the requirement for listing alias names has various uses in bankruptcy, including the tracing of assets obtained or concealed under other names. Anyway, the question literally called for her to disclose Blake and Kromer's names without limiting it to names used in bankruptcy petitions.

There is an outer limit to confusing or misleading questions and courts do regard some questions as so inherently ambiguous as to defeat a false statement prosecution without regard to the defendant's state of mind. One formulation distinguishes ordinary ambiguity from "fundamental ambiguity," the latter barring conviction outright;[3] we have also said a conviction is improper if the answer given is literally correct even if it could be regarded as misleading. United States v. Rowe, 144 F.3d 15, 21 (1st Cir. 1998).

The answer here was not literally correct nor was the question fundamentally ambiguous. This follows from the commonly understood breadth of the term "use," only slightly narrower than words like "do" or "make," combined with the fact that using the name of another on a credit card application or making purchases

---

[3]United States v. Mubayyid, 658 F.3d 35, 61 (1st Cir. 2011), cert. denied, 132 S.Ct. 2378 (2012); United States v. Boskic, 545 F.3d 69, 89-90 (1st Cir. 2008), cert. denied, 555 U.S. 1175 (2009); United States v. Richardson, 421 F.3d 17, 33 (1st Cir. 2005), cert. denied, 547 U.S. 1162 (2006).

with the resulting credit card is plainly portraying oneself as that other person. True, even a reasonably clear question can be innocently misunderstood; but no conviction for making a false statement is complete without a finding of scienter.

The remaining wrinkle is, as Marston points out, that some of the cards bore her own name in addition to those of Kromer or Blake, but this also is of no help to her. Whether or not one could distinguish dubitante between using another's name without more and using it fraudulently along with one's own, the evidence includes correspondence seized from Marston's home that clearly supported the inference that at least some of the cards Marston secured and used bore only the names "Kristy Kromer" or "Susan Blake."

Marston also suggests that her answer, true or false, was immaterial. As the bankruptcy trustee in this case explained at trial, finding all names used by the debtor in any capacity in the last eight years serves as a tool for locating additional assets to distribute to the debtor's creditors. That the particular appropriation of Kristy Kromer and Susan Blake's names here would have lead rather to more claims against the estate than to more assets matters not. United States v. Edgar, 82 F.3d 499, 510 (1st Cir.), cert. denied, 519 U.S. 870 (1996); United States v. Grant, 971 F.2d 799, 809 n.18 (1st Cir. 1992).

Finally, the evidence was sufficient for the jury to conclude that Marston's failure to reveal the aliases she had used was done with the kind of dishonest or fraudulent awareness required by the statute. The language reasonably called for disclosure of Blake and Kromer's names as ones previously assumed by Marston in credit card applications, and Marston had an affirmative motive to falsify her answers by omitting their names. Cf. United States v. Shadduck, 112 F.3d 523, 525-27 (1st Cir. 1997).

The first point is covered by our earlier discussion. The second is obvious: to reveal her use of the names would have pointed directly to Marston as the perpetrator of credit card fraud. She responds that investigators were already looking into the matter; but it is one thing to be subject to suspicion and another to make admissions that would go far toward conviction. Of course, Marston did not have to make any such admissions; but once she chose to file for bankruptcy she could not then represent under penalty of perjury that she had accurately answered the questions on her petition.

Turning to Count Four, Marston contends that no reasonable jury could have concluded that she made a false statement by omitting the debts she had incurred under Blake's name to Bank of America, BMW Bank of North America, and American Express, because it was an "objectively reasonable interpretation"

-13-

of the bankruptcy form that it did not call on her to include that information.  Rowe, 144 F.3d at 21.  The section of the petition at issue read:

> "SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS...State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition."

Marston's stipulation conceded that "[f]raudulent liabilities incurred in Blake's name totaled approximately $61,545" and that this was corroborated by records of the named creditors. But Marston argues to us that she reasonably understood the question to exclude claims against her by the creditors identified in the count because the debts she ran up on the credit cards created claims against Blake, not against her.

It is not clear that the banks held claims against Blake if the cards were obtained solely by Marston's fraud, but that hardly matters.  As a result of Marston's actions, the banks almost certainly held contract, fraud or restitution claims against Marston for merchandise or services that she secured through her use of the cards that she had procured using Blake's name.  See generally Restatement (Second) of Torts § 525 (1977); Restatement (Third) of Restitution & Unjust Enrichment § 41 (2011).

The term "claim" easily comprehends claims of the issuers against Marston.  The bankruptcy statute defines a  "claim" as a

-14-

"right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). <u>See also</u> <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 83 (1991) ("Congress intended by this language to adopt the broadest available definition of 'claim.'").[4]

The problem for the government on Count Four has nothing to do with ambiguity nor with the other elements (assuming falsity). If there were falsity, that and her motive to lie would permit an inference of scienter; and the materiality requirement is easily satisfied: a listing of claims can identify debts including funds supplied to the debtor, which in turn may lead the trustee or creditors to savings or other assets. And Marston does not dispute that the cards were fraudulently used for purchases and so presumptively created claims against her by the issuing banks.

Instead, the missing element is proof that at the time that the bankruptcy petition was filed, there were <u>still</u> extant claims against Marston. The stipulation quoted above was enough to prove beyond a reasonable doubt that claims against Marston had arisen when the unauthorized purchases were made; but the

---

[4]Although both the statute and the bankruptcy form use the word "claim," the indictment in this case used the term "debt" which, if applied to an unliquidated fraud claim, must be an unusual usage; but presumably the drafter assumed that Marston, if she ordered goods using a false name, had contracted a debt for which she was liable.

-15-

prosecutor accepted a stipulation that nowhere said that these claims remained unpaid at the time Marston filled out the bankruptcy forms.

The stipulation, it appears, was drafted by defense counsel and gives every evidence of soft-pedaling concessions and confusing matters; the district judge cautioned the prosecutor against accepting it. Quite apart from the failure to make clear that the bank claims endured, the stipulation seems so disadvantageous to the prosecutor as to remain a mystery, although there are sometimes practical reasons for trial-counsel choices that remain invisible to the appellate court.

Likely the stipulation's failure to nail down the duration of the claims was not a deliberate tactic by defense counsel, for he argued in his closing to the jury that the amounts that the government claimed to be owed to the card issuers <u>were in fact expressly disclosed on the petition as debts Marston herself owed to Blake</u>. That closing argument more or less suggests that Marston's disclosure as to Blake comprehended whatever was owed to the card issuers.

The latter claim could easily have been rejected by the jury: the amounts owed to Blake directly did not correspond to what was owed to the issuers and there was evidence of <u>other</u> debts owed by Marston to Blake to which the listings on Marston's schedules better corresponded. But it is pretty clear that defense counsel

-16-

made no effort to argue either on the Rule 29 motion or to the jury the defect now sought to be raised on appeal, namely, that the debts were not shown to persist at the time the bankruptcy petition was filed.

But, for reasons already explained, a general objection under Rule 29 preserves just such previously unmentioned defects. Contrary to the government's rescue effort on appeal, there is no way to read the stipulation to say that the claims remained outstanding at the time Marston filed her bankruptcy petition. And while we would hardly expect Marston to have paid those claims in the interim (and in fact we now know that she did not[5]), the government bore the burden of proof at trial and it ultimately failed to establish the element of falsity.

A slightly better argument, advanced as an alternative by the government, is that defense counsel in closing conceded that the claims remained unpaid. In a civil case, counsel's concession of a factual point in argument is usually sufficient without any need for formal proof, e.g., Butynski v. Springfield Terminal R. Co., 592 F.3d 272, 277 (1st Cir. 2010); and several circuits have applied the same rule to criminal cases. See, e.g., United States v. Rusan, 460 F.3d 989, 993-94 (8th Cir. 2006), cert. denied, 549

---

[5]Shortly after filing for bankruptcy, Marston was convicted of identity, social security, and access device fraud for illegally securing the credit cards; the judgment of conviction included restitution orders in favor of the card issuers, but the jury in this case had no knowledge of that proceeding.

-17-

U.S. 1312 (2007).  But while we might well follow this course ourselves, a requisite would be a reasonably clear concession.

Defense counsel did not contest in his closing the government's implicit assumption that the card issuers' claims against Marston were outstanding at the time she signed the bankruptcy forms; but this is not an explicit concession.  Whatever else one makes of defense counsel's gambit of conflating the disclosed debts to Blake with any possible card issuer claims against Marston, it simply does not address the question of whether the issuers' claims existed at the time Marston filed for bankruptcy.

The result is that Count Four fails for lack of proof and the judgment on Count Four is <u>reversed</u>.  The conviction on Count One is <u>affirmed</u>; the sentence on Count One was not independently challenged on appeal but the district court has leave to re-sentence on Count One if the present sentence on that count was in any way affected by the conviction on Count Four.

<u>It is so ordered</u>.