# United States Court of Appeals
## For the First Circuit

Nos. 17-1331, 17-1332, 17-1353

UNITED STATES OF AMERICA,

Appellee,

v.

DORIS MOREL; ERIKA TOMASINO;

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Virginia G. Villa for appellant Doris Morel.
Judith H. Mizner, Assistant Federal Public Defender, Federal
Public Defender Office, District of Massachusetts, with whom
Christine DeMaso, Assistant Federal Public Defender, Federal Public
Defender Office, District of Massachusetts, was on brief, for
appellant Erika Tomasino.
Donald C. Lockhart, Assistant United States Attorney, with whom
Stephen G. Dambruch, Acting United States Attorney, was on brief,
for appellee.

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

March 16, 2018

**LYNCH**, **Circuit Judge**.  After a six-day trial, a federal jury convicted co-defendants Doris Morel and Erika Tomasino of conspiracy and multiple fraud-related counts based on their participation in a multi-year tax-return fraud scheme.  Each was sentenced to three years in prison.  On appeal, Morel challenges her conviction with only a Batson jury claim.  Tomasino adopts Morel's Batson claim and raises four claims of her own, described later.  We affirm both defendants' convictions.

I.

On September 17, 2015 a grand jury indicted Juan Vasquez, Belkis Vasquez, Doris Morel, and Erika Tomasino for conspiracy, theft of government property, mail fraud, money laundering, and aggravated identity theft, for their participation in an extensive scheme primarily run from a grocery store in Pawtucket, Rhode Island called the "Dominican Market."  We provide an overview of the scheme and specify Morel's and Tomasino's alleged roles, reciting the evidence in the light most favorable to the verdict.  United States v. Van Horn, 277 F.3d 48, 50 (1st Cir. 2002) (citing United States v. Escobar-de Jesus, 187 F.3d 148, 157 (1st Cir. 1999)).

Between 2010 and 2014, about 450 fraudulent or stolen U.S. Treasury tax refund checks, amounting to over $2.6 million, were deposited into bank accounts under Juan Vasquez's or his co-conspirators' control.  The vast majority of the refunds were procured from bogus federal tax returns, which used the names and

- 3 -

social security numbers of real U.S. citizens residing in Puerto Rico. The returns listed false addresses in the Northeast, from which the conspirators would retrieve the refund checks once delivered. The conspirators then endorsed the checks by forging the payees' signatures, and deposited them into shell bank accounts. To camouflage their illicit activity, the conspirators concurrently deposited legitimate paychecks from customers of the Dominican Market, Juan Vasquez's grocery store.

Tomasino was employed at the Dominican Market for over ten years in a variety of positions, including secretary, bookkeeper, and cashier. At work, Tomasino would receive faxes with the names, social security numbers, and dates of birth of other persons, and would send the information to Juan Vasquez's office. In 2011, multiple tax refund checks were mailed to Tomasino's residence and an adjacent mailbox. Between 2013 and 2014, Tomasino deposited and paid others to deposit twenty refunds, totaling almost $150,000, alongside legitimate Dominican Market customer checks, into bank accounts under her control. Then, again both personally and through others, Tomasino made withdrawals from those accounts, as well as transfers to an account under Vasquez's control. Tomasino received a one-percent cut from Vasquez for cashing the Treasury checks.

Morel's involvement in the scheme was similar. Like Tomasino, Morel was a longstanding Dominican Market employee. She worked at the cash register and also cashed customer checks. Morel

used her own residence and nearby addresses to pick up the tax refund checks generated by the fraudulent scheme. She then deposited the refunds alongside legitimate Dominican Market checks into accounts under her control, and later withdrew the funds.

Juan Vasquez, the head of the operation, and his sister Belkis, pled guilty. Juan was sentenced to six years in prison, and Belkis to three years of probation. Neither of them testified at Morel and Tomasino's trial.

Morel and Tomasino pled not guilty. In September 2016, at the close of their six-day joint trial, they were each convicted of all but one of the charges against them. In March 2017, they were each sentenced to three years in prison. Morel and Tomasino separately appealed their convictions, and their appeals were consolidated.

II.

A. The Batson Challenges

Morel seeks reversal of her convictions on the basis of a Batson challenge, see Batson v. Kentucky, 476 U.S. 79 (1986), which Tomasino adopts and incorporates into her own brief. Morel does not otherwise challenge her convictions.

We provide the background to the challenge. During voir dire, the magistrate judge asked whether any of the prospective jurors were familiar with, or had frequented, the Dominican Market. Juror 15 disclosed that his grandmother lived near the store and frequented

it, and that he himself had occasionally been there to purchase groceries. He stated that he had seen the owners of the store, was "familiar with who they were," and had "spoke[n] on friendly terms" with them, but added upon further questioning that he believed he could serve as an impartial juror. The government exercised a peremptory strike against Juror 15. Tomasino's counsel, but not Morel's counsel, challenged the strike as racially discriminatory, invoking Batson, and pointed out that Juror 15 was the sole black male on the jury panel and was qualified to serve. The government justified its strike on the basis that Juror 15 had personal knowledge of the Dominican Market, the "epicenter" of the alleged fraudulent scheme. The magistrate judge rejected Tomasino's challenge, emphasizing that the entire case "revolve[d] around the Dominican Market" and that some of the defendants were employed there. The court found the government's justification legitimate and nondiscriminatory. On appeal, Morel contends that the government's peremptory strike was racially motivated, in violation of Batson.

"We review a district court's factual determination that the government was not motivated by race for clear error, and may reverse only where we arrive at a 'definite and firm conviction that a mistake has been committed.'" United States v. Casey, 825 F.3d 1, 11 (1st Cir. 2016) (quoting United States v. Gonzalez-Melendez, 594 F.3d 28, 35 (1st Cir. 2010)).

The government raises several procedural challenges.  We need not resolve them, because the <u>Batson</u> challenge patently lacks merit.  <u>See</u> <u>United States</u> v. <u>Aranjo</u>, 603 F.3d 112, 115 (1st Cir. 2010).  The government's basis for its strike was plainly race-neutral and legitimate.  It was eminently reasonable to fear that a juror who had been a customer at the store around which the alleged conspiracy revolved, and had directly interacted with the alleged leaders of that conspiracy, might be biased or harbor preconceived views about the case.

Morel argues that because the neighborhood of the Dominican Market has a higher percentage of African American residents than other parts of Rhode Island, striking a juror for having frequented the Dominican Market and being familiar and friendly with its owners is a proxy for striking that juror on the basis of his or her race.  That is plainly wrong.  A "statistical fact alone cannot convert a facially race-neutral explanation into one based on race."  <u>Richard</u> v. <u>Relentless, Inc.</u>, 341 F.3d 35, 45 (1st Cir. 2003); <u>see also</u> <u>Caldwell</u> v. <u>Maloney</u>, 159 F.3d 639, 654 (1st Cir. 1998).

Morel's theory of discriminatory intent is all the more patently without merit considering that her repeated representation that the government struck the "sole black venire member" is wrong.  As the record shows, another black juror, a woman, was on the panel and served through the verdict.

B.    Tomasino's Other Claims

Tomasino raises four claims of her own: (1) that the government produced insufficient evidence to support her conviction for aggravated identity theft; (2) that the district court provided an erroneous and prejudicial Pinkerton instruction to the jury; (3) that the district court erred in admitting against Tomasino incriminating statements made by Morel; and (4) that the district court admitted improper summary witness testimony.

1.    Sufficiency of the Evidence of Aggravated Identity Theft

Tomasino challenges the sufficiency of the evidence supporting her conviction for aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 39).  Section 1028A prohibits "knowingly transfer[ing], possess[ing], or us[ing], without lawful authority, a means of identification of another person" in relation to an enumerated felony.  The government alleged and the jury found that Tomasino violated § 1028A when she deposited a Treasury check bearing the name and forged endorsement signature of a U.S. citizen whom the parties refer to as "JRM."  Tomasino challenges her conviction on the grounds that the government failed to prove (1) that JRM's name on a Treasury check was a "means of identification"; (2) that Tomasino "used" JRM's means of identification; (3) that JRM was a real person; and (4) that Tomasino knew that JRM was a real person.

This court reviews preserved sufficiency challenges "de novo, albeit taking the evidence in the light most favorable to the

verdict," and unpreserved challenges "only for clear and gross injustice." United States v. Marston, 694 F.3d 131, 134 (1st Cir. 2012) (quoting United States v. Upham, 168 F.3d 532, 537 (1st Cir. 1999) (internal quotation marks omitted)). Tomasino preserved her last three challenges (but not the first) by contemporaneously raising them before the district court, in her oral motion for judgment of acquittal and/or in her timely post-trial written motion. As to those claims, we "examin[e] 'whether the total evidence, taken in the light most amicable to the prosecution, together with all reasonable inferences favorable to it, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant was guilty as charged.'" United States v. Castro-Lara, 970 F.2d 976, 979 (1st Cir. 1992) (quoting United States v. Maraj, 947 F.2d 520, 522-23 (1st Cir. 1991)).

As to her first claim, Tomasino asserts that even though she failed to argue before the district court that JRM's signature did not constitute a "means of identification," her written motion for acquittal made a "general" sufficiency-of-the-evidence challenge that preserved for appeal all possible sufficiency challenges to the aggravated identity theft count. This court has held that "a general sufficiency-of-the-evidence objection preserves all possible sufficiency arguments," whereas "a motion raising only specific sufficiency arguments waives unenumerated arguments." United States v. Foley, 783 F.3d 7, 12 (1st Cir. 2015).

Marston opined in dictum that when a sufficiency objection is ambiguous -- i.e., where specific objections accompanying a seemingly "general" objection could be construed either as examples or as an exhaustive list -- "[t]here is good reason in case of doubt to treat [the] ambiguous motion . . . as 'general' in the sense that it preserves all grounds." 694 F.3d at 135. In that case, the language counsel used to introduce specific objections implied the existence of other unenumerated objections. See id. at 134. Here, by contrast, Tomasino's motion for acquittal gave the district court no reason to doubt that her three enumerated objections represented her entire sufficiency challenge. And unlike in Marston, the district court did not treat Tomasino's motion as a general one: it addressed her three specific objections, and went no further. We conclude that Tomasino has not preserved her "means of identification" challenge, and accordingly review that issue only for clear or gross injustice.

The district court committed no injustice, or even error, in allowing the jury to consider whether JRM's name and forged signature on a Treasury check were a "means of identification." The statute, § 1028(d)(7), broadly construes the term "means of identification" to mean "any name or number that may be used, alone or in conjunction with other information, to identify a specific individual . . . ." This court has found a name, alongside other information, to qualify as a "means of identification." See, e.g.,

- 10 -

United States v. De La Cruz, 835 F.3d 1, 9-11 (1st Cir. 2016) (name and date of birth); United States v. Kuc, 737 F.3d 129, 134-35 (1st Cir. 2013) (name and company name). Tomasino attempts to argue that we have not previously found the use of a name alone to suffice under § 1028A. But Tomasino did not invoke JRM's name in a vacuum: she cashed a tax refund check that was issued to a unique individual identified by a unique social security number. The check she deposited bore JRM's full name as well as his (forged) signature on the endorsement line. We have no difficulty finding that a name together with a forged endorsement signature placed on a tax refund check constitute a "means of identification" for purposes of § 1028A. Other circuits agree. See, e.g., United States v. Wilson, 788 F.3d 1298, 1310-11 (11th Cir. 2015) ("[T]he use of a person's name and forged signature sufficiently identifies a specific individual to qualify as a 'means of identification' under the aggravated identity theft statute."); United States v. Porter, 745 F.3d 1035, 1043 (10th Cir. 2014); United States v. Blixt, 548 F.3d 882, 888 (9th Cir. 2008).

Tomasino's next argument is that her knowing act of depositing the check cannot alone amount to "use" of JRM's means of identification. After the district court had rejected the claim in February 2017, this court issued a decision construing the term "use" under § 1028A "to require that the defendant attempt to pass him or herself off as another person or purport to take some other action on another person's behalf." United States v. Berroa, 856 F.3d 141,

- 11 -

156-57 (1st Cir. 2017) (emphasis added). Tomasino's actions here easily meet this definition. Tomasino deposited a check made payable to JRM bearing an endorsement purporting to be JRM's signature, despite the fact that she knew the signature had been forged. Based on the evidence presented at trial, the jury could have found beyond a reasonable doubt either that Tomasino herself forged JRM's signature or that Tomasino knew one of her co-conspirators had forged his signature. In this way, Tomasino purported to act on JRM's behalf, and thus "used" his means of identification.

Tomasino next argues that the government did not adequately prove that JRM was a real person. We disagree: a jury could have reasonably concluded that this element was proven beyond a reasonable doubt. The evidence presented at trial established that the IRS verifies the name and social security number appearing on a tax return before it issues a refund. Tomasino stresses that one of the government's witnesses generally acknowledged that the IRS's verification process is not "foolproof," but the jury was not required to accept that this was an instance of an error in the validation system.

Tomasino falls back on the argument that there was insufficient evidence for the jury to infer that she knew that JRM was a real person. This court has previously found sufficient evidence of a defendant's knowledge that an identity was real where the defendant repeatedly subjected that identity to scrutiny. See

United States v. Soto, 720 F.3d 51, 55 (1st Cir. 2013); United States v. Valerio, 676 F.3d 237, 244-45 (1st Cir. 2012). Although Tomasino only cashed a single refund check made out to JRM, the evidence showed that the scheme in which she participated involved hundreds of fraudulent tax refund transactions. Moreover, Tomasino admitted that she would collect the personal identifying information of other persons and provide that information to Vasquez. A jury could reasonably infer, under these circumstances, that Tomasino knew that the names appearing on the tax refund checks she was depositing belonged to real persons.

   2.   Pinkerton Instruction

Tomasino next attacks the district court's decision to give the jury a Pinkerton instruction that did not exclude the substantive charges against her of money laundering, mail fraud, and aggravated identity theft. She argues that the instruction confused the jury and lessened the government's burden of proof. "[U]nder the Pinkerton doctrine, a defendant can be found liable for the substantive crime of a coconspirator provided the crime was reasonably foreseeable and committed in furtherance of the conspiracy." United States v. Vázquez-Botet, 532 F.3d 37, 62 (1st Cir. 2008).

As to the objection made, the court had provided the parties proposed instructions that included a Pinkerton charge previously proposed by the government. Trial counsel for Tomasino objected that the Pinkerton instruction was overbroad and could lead to jury

confusion as to the counts where she was charged individually and no other defendant was so charged, while conceding that the instruction was appropriate for Count 2. Trial counsel specifically referred to United States v. Sanchez, 917 F.2d 607 (1st Cir. 1990) and a Second Circuit case referenced in Sanchez. The government responded that Tomasino seemed to be making some sort of lack of notice argument, which was unfounded since the government had consistently given notice of its intended use of Pinkerton liability. After a recess, the court said that it had read Sanchez and that the case did not support defense counsel's position. The court explained:

> [Sanchez] said in the footnote, "We're not confronted with the sort of 'marginal case' in which the Pinkerton instruction sometimes causes concerns," and cited cases. "The Second Circuit appropriately cautioned that a Pinkerton charge 'should not be given as a matter of course,' particularly where the jury is being asked to make the converse inference; that is, to infer, on the basis of a series of disparate criminal acts, that a conspiracy existed. In the present case there was ample evidence that Rafael Sanchez was a member of the alleged conspiracy to possess cocaine for distribution."

(quoting Sanchez, 917 F.2d at 612 n.4). The court went on to conclude that in this case, as in Sanchez, there was ample evidence from which the jury could conclude a conspiracy existed. Later, defense counsel again asked the court to "change the [Pinkerton] instruction . . . [to] make it less broad and more specific to the particular charges

that it should address." The court rejected the request. At no point did counsel expressly ask for a limiting instruction.

On appeal, Tomasino reiterates that the Pinkerton instruction should not have extended to substantive counts for which the government's primary argument was that she personally engaged in the prohibited conduct. She claims prejudice insofar as the instruction both "confused the jury" and "diminished the government's burden of proof" because it enabled the jury to convict Tomasino of crimes "without requiring the government to prove the mens rea typically required for such convictions."

Tomasino's arguments fail. We see no evidence that the jury was confused by the instruction or that it thought the government had a lesser standard of proof. There were only two defendants in this trial, and there was little risk the jury would confuse the evidence as to each. Tomasino's acquittal on one count of aggravated identity theft (Count 40) (to which she thought the Pinkerton charge should not apply) helps prove the point. The court properly instructed the jury on the substantive offenses involving Tomasino's own conduct. Moreover, as the district court found, there was "ample evidence" of conspiracy, and Tomasino does not appear to challenge her conspiracy conviction on appeal. In such circumstances, the

instruction regarding the Pinkerton theory of liability was harmless.[1]

### 3. Morel's Statements to IRS Agents

Tomasino next challenges the admission of out-of-court statements Morel made to IRS agents during questioning. At trial, the agents recounted how Morel described to them how she had deposited Treasury checks into various bank accounts, including in one instance into an account under Tomasino's name. Tomasino contends that the government introduced these admissions as "co-conspirator statements" under Federal Rule of Evidence 802(d)(2)(E), and that the district court failed to make the requisite Petrozziello finding that "the declarant and the defendant were members of a conspiracy when the statement was made, and that the statement was made in furtherance of the conspiracy." United States v. Ciresi, 697 F.3d 19, 25 (1st Cir. 2012). The government retorts that the statements were introduced as admissions of a party opponent, under Federal Rule of Evidence 801(d)(2)(A), and thus did not require Petrozziello findings.

Because Tomasino did not contemporaneously object to the admission of Morel's statements at trial, plain-error review applies.

---

[1] The concern raised in the Second Circuit case cited by Sanchez -- United States v. Sperling, 506 F.2d 1323, 1341-42 (2d Cir. 1974) -- does not arise in cases, such as this one, where there was considerable evidence of the defendant's involvement in the conspiracy. See United States v. Stackpole, 811 F.2d 689, 696 (1st Cir. 1987).

See <u>United States</u> v. <u>Rodríguez-Milián</u>, 820 F.3d 26, 33-34 (1st Cir. 2016). To establish plain error, Tomasino must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001).

It is undisputed that Morel's statements were admissible against <u>Morel</u> as party admissions. The issue is whether the government also used Morel's statements to incriminate <u>Tomasino</u>, in which case they would need to be independently admissible against Tomasino as "co-conspirator" statements. See <u>United States</u> v. <u>Vega Molina</u>, 407 F.3d 511, 518-519 (1st Cir. 2005) ("It is well-established that the out-of-court statements of a non-testifying defendant, even if admissible against the declarant, may not be used against a jointly tried codefendant unless otherwise independently admissible against that codefendant.").

Tomasino stresses that the district court failed sua sponte to specifically instruct the jury not to consider Morel's statements against Tomasino. Tellingly, Tomasino's trial counsel never requested a limiting instruction, let alone argued that the statements would be sufficiently incriminating vis-à-vis Tomasino as to warrant their exclusion or separate trials. <u>Cf.</u> <u>Bruton</u> v. <u>United States</u>, 391 U.S. 123, 135-36 (1968) (proscribing the introduction of statements

- 17 -

that are "powerfully incriminating" as to a jointly tried co-defendant). Tomasino's claim of clear error fails because she has not shown that the government introduced the statements as evidence of her (as opposed to Morel's) participation in the scheme, or that the statements facially incriminated her. And even if there was error, it neither affected Tomasino's substantive rights nor seriously impaired the fairness of the proceedings, because Morel's statements were, at worst, only mildly and indirectly incriminating as to Tomasino.

### 4. Testimony of IRS Agent Matthew Amsden

Tomasino's final argument is that the district court failed to exclude testimony from IRS Special Agent Matthew Amsden, which she argues was prejudicial summary witness testimony. Amsden conducted an investigation of the Dominican Market after receiving a tip from a local detective. As the government's final witness at trial, Amsden synthesized, with the help of summary charts, the evidence uncovered over the course of the investigation, which included hundreds of tax returns and voluminous records of related banking transactions. Over the course of Amsden's lengthy testimony, Tomasino only objected to one instance of alleged hearsay testimony and one summary chart. The district court overruled both objections. On appeal, Tomasino sweepingly attacks the agent's testimony, arguing that it improperly bolstered the testimony of other witnesses,

"offered opinions as to ultimate issues, and organized and endorsed the government's case for the jury."

Although we normally review the district court's evidentiary rulings for abuse of discretion, United States v. Stierhoff, 549 F.3d 19, 27 (1st Cir. 2008), Tomasino did not contemporaneously object to the bulk of the testimony she now protests. We review her unpreserved challenges for plain error. See United States v. Powers, 702 F.3d 1, 10 (1st Cir. 2012).

Tomasino's broad attack on Amsden's testimony fails. This court has held that "summary testimony . . . is permissible to summarize complex aspects of a case such as the financial dealings of a defendant." United States v. Hall, 434 F.3d 42, 57 (1st Cir. 2006). Moreover, the majority of Amsden's testimony consisted of a description of his own investigation of the Dominican Market and the evidence of fraud he uncovered. Such testimony, based on personal knowledge, is plainly admissible. See United States v. Rose, 802 F.3d 114, 121 (1st Cir. 2015) ("Where an officer testifies exclusively about his or her role in an investigation and speaks only to information about which he or she has first-hand knowledge, the testimony is generally . . . permissible.").

On a few occasions, Amsden briefly referred to testimony from prior witnesses, but Tomasino did not object, and the testimony was hardly prejudicial. The one time counsel raised an objection, the court instructed Amsden to "be careful to describe only what [he]

- 19 -

kn[e]w from [his] knowledge, as opposed to . . . what another witness may have testified to earlier."  The court also soundly overruled the objection because Amsden was describing evidence he had reviewed himself in the course of his investigation.

Tomasino's plaint as to Amsden's opinion testimony is also meritless.  Tomasino alleges that Amsden usurped the jury's function when he opined that the deposit activity for her bank account was consistent with money laundering and inconsistent with the activity of a normal convenience store. This inference, which was based on Amsden's observations of the account activity and his experience with tax-fraud investigations of small convenience stores, was admissible lay testimony.  See United States v. Maher, 454 F.3d 13, 23 (1st Cir. 2006) (noting that Federal Rule of Evidence 701 allows for "testimony based on the lay expertise a witness personally acquires through experience, often on the job").

### III.

We affirm each of the defendants' convictions.