MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 94
Docket:       And-17-464
Argued:       June 12, 2018
Decided:      July 10, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

MALIK B. HOLLIS

HUMPHREY, J.

[¶1]  Malik B. Hollis appeals from a judgment of conviction of reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211(1), 1252(4) (2017), and criminal threatening with a dangerous weapon (Class C), 17-A M.R.S. §§ 209(1), 1252(4) (2017), entered in the Unified Criminal Docket (Androscoggin County, *Stokes, J.*) after a jury trial.  According to Hollis, who describes himself as an African American male, the trial court erred when it overruled his objection to the State's use of a peremptory challenge that excluded from the jury the sole person of color[1] in the jury pool.  Because the record supports the trial court's determination that the State did not engage

---

[1]  The court and Hollis referred to the juror in question as a "person of color."  Because the record does not reveal the ethnicity of the juror, we will do the same.

2

in purposeful discrimination when it peremptorily challenged the juror, we affirm the judgment.

## I. BACKGROUND

[¶2]  On May 21, 2016, an altercation occurred between Hollis and several white men outside an apartment building in Lewiston.  Although what precipitated the altercation and how it escalated were disputed at trial,[2] there was no dispute that at some point during the incident, Hollis ran around the corner to his apartment and returned with a handgun.  Upon returning outside and seeing the men, Hollis proceeded to fire the gun at a dirt pile located near him.

[¶3]  On May 23, 2016, Hollis was charged by complaint with reckless conduct with a dangerous weapon and criminal threatening with a dangerous weapon.  A jury trial was scheduled for July 2017.

[¶4]  Jury selection took place on July 6, 2017.  Of the thirty-two randomly selected prospective jurors, only one—Juror 71—was a person of color.  Neither the prosecutor nor defense counsel challenged Juror 71 for

---

[2]  According to Hollis, each of the other men had a weapon of some sort.  Hollis testified that he decided to retrieve his handgun after the men swore at him, chased him, and threatened to kill him.  One of the men involved in the incident also testified at trial.  The man acknowledged that he hit Hollis with a metal handlebar.  The man testified that he "called [Hollis] the N word and told him [he] was going to fucking kill him."  The man also testified that one of the other men on his side had an aluminum baseball bat and another had a baton.

cause, but the prosecutor used a peremptory challenge, *see* M.R.U. Crim. P. 24(c), to strike Juror 71. Defense counsel objected to the State's exercise of a peremptory challenge to strike from the jury the sole person of color in the jury pool. The prosecutor offered an explanation that the juror's "ethnicity had no bearing in regards to why I struck him. I was looking for his level of education and other various factors that were provided in the list from the court." According to the information about the prospective jurors provided by the court to both parties, Juror 71 had an eleventh-grade education, which was the lowest education level among the thirty-two prospective jurors randomly selected from the jury pool. The court noted the objection but stated that it could not make any findings of systemic exclusion based on one juror. Hollis did not request that the court engage in any further inquiry, and he did not object to the way the court addressed the issue. Juror 71 was struck from the jury.

[¶5] Hollis's trial took place on July 13 and 14, 2017. The defense strategy was one of self-defense and the court instructed the jury accordingly. The jury found Hollis guilty on both charges. The court then sentenced Hollis to serve a term of three years for each charge, to be served concurrently, and ordered Hollis to forfeit his firearm.

4

[¶6]  Following the trial, Hollis filed a motion for judgment of acquittal, or in the alternative for a new trial, on the basis that the State's striking from the jury the sole person of color violated the principles of equal protection and due process as outlined by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986).  The State filed a response and the court held a hearing on Hollis's motion.

[¶7]  The court denied Hollis's motion in a written order on October 6, 2017.  The court acknowledged that it had erred in the handling of Hollis's *Batson* challenge at the time of Hollis's objection during jury selection by mistakenly focusing on the absence of any systemic exclusion of minorities when, as it now understood, the "Constitution forbids striking even a single prospective juror for a discriminatory purpose."  The court then described the three-step process outlined in *Batson* that it acknowledged it should have applied when Hollis objected to the State's peremptory challenge.  After applying the *Batson* test to the circumstances of the case at hand, the court found that the State's use of a peremptory challenge on Juror 71 was not exercised with a discriminatory intent or purpose.  Hollis timely appealed. M.R. App. P. 2B(b)(2).

## II. DISCUSSION

[¶8]  In a case involving a *Batson* challenge, an appellate court reviews "a [trial] court's factual determination that the government was not motivated by race for clear error, and may reverse only where [it] arrive[s] at a definite and firm conviction that a mistake has been committed."  *United States v. Morel*, 885 F.3d 17, 21 (1st Cir. 2018) (quotation marks omitted).

[¶9]  "The Constitution forbids striking even a single prospective juror for a discriminatory purpose."  *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008) (alteration omitted) (quotation marks omitted).  The Supreme Court has explained that "[t]he very idea of a jury is a body . . . composed of the peers or equals of the person whose rights it is selected or summoned to determine."  *Batson*, 476 U.S. at 86 (quotation marks omitted).  "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community.  Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness our system of justice."  *Id.* at 87.

[¶10]  In *Batson*, the Supreme Court outlined a three-step process for determining whether a peremptory challenge is discriminatory, summarized as follows:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder*, 552 U.S. at 476-77 (alterations omitted) (quotation marks omitted); *see also Batson*, 476 U.S. at 96-98.

[¶11]   In this case, the trial court, in its order denying Hollis's post-judgment motion, found that Hollis satisfied the first step of the *Batson* analysis.  *See Snyder*, 552 U.S. at 476.  The court determined that Hollis made a prima facie showing by virtue of the fact that Hollis himself is African American and Juror 71 was the only person of color in the jury pool.

[¶12]   Next, the court determined that the prosecutor had offered a race-neutral basis for striking Juror 71 at the time of defense counsel's *Batson* objection during jury selection.  *See id.* at 476-77.  The prosecutor explained that she struck Juror 71 because of his low level of education relative to those of the other potential jurors.[3]

---

[3]  After trial, in its response to Hollis's post-judgment motion, the State expanded on that explanation, reiterating its concerns about Juror 71's level of education and explaining that it also chose to strike Juror 71 based on his responses to individual voir dire during the previous jury selection on the same date before the same judge.  As interpreted by several circuit courts, the Supreme Court instructs "that when ruling on a *Batson* challenge, the trial court should consider only the reasons initially given to support the challenged strike, not additional reasons offered after the fact."  *United States v. Taylor*, 636 F.3d 901, 905 (7th Cir. 2011) (citing *Miller-El v. Dretke*, 545 U.S. 231, 246-52 (2005)); *see also Holloway v. Horn*, 355 F.3d 707, 725 (3rd Cir. 2004) ("*Batson* is

[¶13]  The final step in the *Batson* analysis is for the trial court to review the parties' submissions and make a determination as to whether the defendant has shown purposeful discrimination.  *See id.* at 477.  In this case, the court determined that Hollis had not shown purposeful discrimination.

[¶14]  Our task is to review that determination for clear error.  *See Morel*, 885 F.3d at 21.  Although we may be skeptical of a proffered explanation for striking a juror based on low education level without individual voir dire on intelligence or education, *see Miller-El v. Dretke*, 545 U.S. 231, 246 (2005), "the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal."  *See Hernandez v. New York*, 500 U.S. 352, 364 (1991) (plurality opinion).

[¶15]  "Discriminatory purpose . . . implies that the decisionmaker . . . selected . . . a particular course of action at least in part because of, and not merely in spite of, its adverse effects upon an identifiable group."  *Id.* at 360 (quotation marks omitted).  Pursuant to the *Batson* framework, the ultimate burden is on the defendant to demonstrate that the State acted on the basis of

---

concerned with uncovering purposeful discrimination, and where a prosecutor makes his explanation for a strike a matter of record, our review is focused solely upon the reasons given."). Because the prosecutor provided an explanation for the use of the peremptory challenge at the time of the *Batson* objection, the trial court considered only that explanation, as will we.

8

purposeful discrimination. *See* 476 U.S. at 93*.* Based on the record in this case, it appears that the State's jury selection strategy favored jurors with more education.[4] Because the prosecutor offered a race-neutral explanation that reflected the State's jury selection strategy, *see Hernandez*, 500 U.S. at 360, and because on this record Hollis—who had the burden of proof—has not established that the record compelled the court to find that the prosecutor's explanation was a pretext for discrimination, we conclude that the court did not err when it determined that the prosecutor did not engage in purposeful discrimination. *See St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 16, 55 A.3d 443 ("[O]n issues on which [a party] has the burden of proof, the clear error standard of review requires that, to overturn a finding that [a party] has failed to prove one or more elements . . . [that party] must demonstrate that a contrary finding is compelled by the evidence."); *Morel*, 885 F.3d at 21.

The entry is:

Judgment affirmed.

---

[4] Due to the complexity of the law of self-defense, *see* 17-A M.R.S. § 108 (2017); Alexander, *Maine Jury Instruction Manual* § 6-58, Lexis (2017-2018 ed., last visited July 9, 2018), this proffered strategy was not unreasonable.

James P. Howaniec, Esq. (orally), Lewiston, for appellant Malik B. Hollis

Katherine E. Bozeman, Asst. Dist. Atty. (orally), Androscoggin County DA's Office, Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2016-1677
FOR CLERK REFERENCE ONLY