22-3164
United States of America v. Wilkin De Los Santos

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

<u>**SUMMARY ORDER**</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of June, two thousand twenty-four.

PRESENT:
GERARD E. LYNCH,
MYRNA PÉREZ,
MARIA ARAÚJO KAHN,
*Circuit Judges.*

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                    No. 22-3164

WILKIN DE LOS SANTOS, a/k/a SEP 550,

*Defendant-Appellant*.[*]

_____

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

1

**FOR APPELLEE:** EDWARD C. ROBINSON JR. (Matthew R. Shahabian, James Ligtenberg, *on the brief*), Assistant United States Attorneys *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

**FOR DEFENDANT-APPELLANT:** PETER J. TOMAO, Law Office of Peter J. Tomao, Garden City, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, dated December 6, 2022, of the district court is **AFFIRMED**.

Defendant-Appellant Wilkin De Los Santos was found guilty by a jury of three counts, only one of which he appeals. Relevant here, De Los Santos appeals his conviction for aggravated identity theft under 18 U.S.C. § 1028A(a)(1), arguing that the government failed to establish with sufficient evidence that he met the knowledge requirement of the statute.

We assume the parties' familiarity with the procedural history of the case, the issues on appeal, and the underlying facts, which we reference only as necessary to explain our decision to affirm the judgment.

### I. STANDARD

"We review *de novo* a challenge to the sufficiency of the evidence supporting a defendant's conviction." *United States v. Krivoi*, 80 F.4th 142, 155 (2d Cir. 2023). However, "a defendant mounting such a challenge 'bears a heavy burden[.]'" *United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014) (per curiam) (quoting *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010)). A reviewing court must sustain the jury's guilty verdict if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The

jury may reach its verdict based upon inferences drawn from circumstantial evidence." *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (internal quotation marks omitted). We will reverse a guilty verdict only if we conclude that "*no* reasonable jury could find guilt beyond a reasonable doubt" based on the totality of the evidence. *Heras*, 609 F.3d at 105–06.

## II.    DISCUSSION

Under 18 U.S.C. § 1028A(a)(1), a conviction for aggravated identity theft requires proof "that the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009).[1] De Los Santos incorrectly argues that the government failed to introduce sufficient evidence at trial to prove that he possessed such knowledge.

At the outset, the Supreme Court has explained that, "in the classic case of identity theft, intent is generally not difficult to prove. For example, where a defendant has used another person's identification information to get access to that person's bank account, the Government can prove knowledge with little difficulty." *Id.* at 656.

The government presented sufficient evidence that De Los Santos knew he and his coconspirators were exploiting real persons' personal identification to gain access to their telephone accounts to fraudulently obtain cellphones. Among others, the jury heard at least *two* categories of testimony: descriptions of the scheme which necessarily required using the identities of real people to access their telephone accounts; and victim statements.

*First*, the government introduced testimony from a cooperating witness, who worked as a straw purchaser of the phones on behalf of De Los Santos, and a lead investigator from AT&T,

---

[1] An aiding-and-abetting theory of aggravated identity theft would also support a conviction. *See* 18 U.S.C. §§ 1028A(a)(1), 2. A conviction for aiding and abetting aggravated identity theft requires proof that a defendant willfully caused another person to use someone else's identification without lawful authority, knowing that the identification used belonged to someone else. *See id.*

3

who described the scheme as necessarily using the identities of real people to access their telephone accounts and testified as to De Los Santos's participation in the scheme. Specifically, the cooperating witness explained that in order to fraudulently obtain cellphones, De Los Santos and other members of the scheme would use their victim's "first and last name, address, date of birth, and their zip code." Trial Tr. at 291.[2] Moreover, the cooperating witness testified that he knew the remaining balance of the cellphones that would be charged to the account holder, that the account holders were real "people," and that the purchase price "all depended on the person's credit." *Id*. at 281–82. The jury was entitled to infer De Los Santos's knowledge from those facts. *See United States v. Holmes*, 595 F.3d 1255, 1258 (11th Cir. 2010) (A reasonable jury could have found that "[the defendant] would not have sought credit using [the victim's] personal information if [the defendant] were not confident that [the victim] likely had an actual credit history.").

The AT&T investigator explained that a person's personal identification had to be used in order to access a person's account to add an authorized user, who is then able to obtain a phone using matching identification. Specifically, the AT&T investigator explained several ways that an authorized user can be added to a person's account: by accessing the account online "through malware[,]" Trial Tr. at 212; "by pretending to be someone they are not to get [an account holder's] password or PIN number," *id.*; by "creat[ing] [an online profile] for [an account holder]" who did not have previously have an online profile, *id.* at 213; or by "walk[ing] into a store to add [themselves] to someone's account [as an authorized user]," which requires "present[ing the account holder's] ID," *id*. at 209. The AT&T investigator further explained that once the authorized user was fraudulently added to a person's account, they can fraudulently obtain a

---

[2] Although the trial transcript was not included in the parties' joint appendix, we rely on the trial transcript filed in the district court. *See United States v. De Los Santos*, 19-cr-00391-AT (S.D.N.Y.), ECF Nos. 195, 197, 199; *see also* Fed. R. App. P. 10(a)(2) (providing that any transcripts of district court proceedings constitute part of the record on appeal).

4

cellphone by using "a driver's license, a state ID, [or] passport" matching "the name and address on the account" for either the "[t]he authorized user[]name or the account holder's name." *Id*. at 210–11. In addition to describing how the scheme works, she testified that De Los Santos was added to numerous victims' AT&T accounts and fraudulently obtained cellphones. *Id*. at 202, 205-208; *see United States v. Lewis*, 408 F. App'x 423, 425 (2d.Cir. 2010) (summary order) (explaining that the use of a real person's identification documents containing names and dates of birth of real individuals provided sufficient evidence to support the defendant's conviction for violating § 1028A).

*Second*, the jury heard testimony from three victims who were impacted by the scheme and De Los Santos's participation in it. One victim testified that De Los Santos was personally added as an authorized user on his account and fraudulently obtained cellphones in his name. Trial Tr. at 110–11. A second victim testified that De Los Santos shipped "ten iPhones purchased in [her] name" to an address in the Bronx, totaling a loss of $25,863.00 for all devices. *Id*. at 481–82. A third victim testified that De Los Santos purchased "four iPhones" on his account and shipped them to New York. *Id*. at 223; *see also United States v. Morel*, 885 F.3d 17, 23 (1st Cir. 2018) (noting that there is "sufficient evidence of a defendant's knowledge than an identity was real where the defendant repeatedly subjected that identity to scrutiny," and concluding that this principle extends to cases where the defendant engages in multiple transactions but uses a different identity for each transaction); *United States v. Pichardo*, 595 F. App'x 19, 21 (2d Cir. 2014) (summary order) (noting that "repeated and successful use of [victims'] personal identification information . . . is powerful circumstantial evidence that he knew the identifying information belonged to a real person as opposed to a fictitious one" (brackets and citations omitted)).[3]

---

[3] At oral argument, De Los Santos's counsel argued, for the first time, that even if the government did prove the required knowledge under § 1028A(a)(1), De Los Santos's conduct did not violate § 1028A(a)(1) as interpreted by

5

When viewing the evidence in the light most favorable to the prosecution, the testimony detailed above, with the reasonable inferences that arise from it, was sufficient to permit a reasonable jury to find beyond a reasonable doubt that De Los Santos knowingly committed aggravated identity theft. While De Los Santos may offer plausible explanations and competing inferences as to the evidence introduced by the government, it is not for us to weigh such explanations and inferences. *See United States v. Friedman*, 998 F.2d 53, 56 (2d Cir. 1993). Instead, we "must 'defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.'" *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (quoting *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019)).

**III.     CONCLUSION**

In sum, we conclude that the evidence introduced at trial, and the reasonable inferences that arise from it, was sufficient to permit a reasonable jury to find beyond a reasonable doubt that De Los Santos participated in a scheme knowingly using the identity of real persons to fraudulently obtain cellphones.

*     *     *

---

the Supreme Court in *Dubin v. United States*, 599 U.S. 110 (2023). Under *Dubin*, the defendant's misuse of another person's means of identification must be "at the crux of what makes the underlying offense criminal," *id*. at 114, and cannot simply "play[ ] an ancillary role" in the crime, *id*. at 123. It is well established that arguments raised for the first time at oral argument are deemed "waived." *United States v. Ramos*, 677 F.3d 124, 129 n.4 (2d Cir. 2012). Even if this argument was not waived, it would still fail. As stated above, a person's personal identification had to be used in order to access a person's account to add an authorized user, who was thus enabled to fraudulently obtain a phone using matching identification. Therefore, the misuse of another person's means of identification was "at the crux" of the fraud here because the very nature of the scheme required the use of a person's identification. *Dubin*, 599 U.S. at 114.

We have carefully considered De Los Santos's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court